Richards vs. The American Desk & Seating Co.

Richards, Assignee, Appellant, vs. The American Desk & Seating Company, Respondent.

*March 23 — April 10, 1894.*

*Contracts: Restraint of trade: Pleading.*

1. A contract in restraint of trade is void unless the restraint is reasonable, i. e., such only as to afford a fair protection to the interests of the party in whose favor it is made, and not so large as to interfere with the interest of the public.

2. Where it is attempted to state a cause of action for violation of such a contract, the pleading will be bad on demurrer if it does not appear from the contract or averments of extrinsic facts that the restraint was reasonable.

3. Counterclaims in this case for violation of a contract by which defendant agreed to purchase, during a period of about four years, $200,000 worth of certain kinds of furniture manufactured by plaintiff, and plaintiff agreed not to sell, during that time, any furniture of those kinds in some thirty states and territories, are *held* insufficient, there being nothing therein to show the ordinary amount of manufacture or sale by either. party or that defendant had established a trade in more than one state out of the thirty.

APPEAL from the Circuit Court for *Manitowoc* County.

The plaintiff sues as assignee of the Manitowoc Manufacturing Company, a Wisconsin corporation, which was engaged in the manufacture and sale of school, church, and opera-house furniture, and other furniture and specialties, and the defendant is an Illinois corporation, and during the times named in the pleadings was engaged in buying, selling, and manufacturing the same kinds of furniture. The action is brought for the recovery of $10,000 for goods, wares, and merchandise of the kind above mentioned, sold and delivered by the plaintiff's assignor to the defendant. The defendant set up two counterclaims for damages, in all in the sum of $370,000, for alleged breaches of two certain written agreements executed by the plaintiff's assignor and the defendant; one of them, dated February 8, 1889,

was to terminate February 1, 1894, and the other and material one was made June 18, 1890, and was to continue in force until December 31, 1894. The question presented was whether these contracts were valid or void as against public policy, as being in restraint of trade.

By the first contract it was agreed that the plaintiff's assignor should make, in such quantities and kinds as might be ordered by the defendant, and deliver the same free on board at Chicago, Ill., opera and church chairs, pews, and settees, bank, church, hall, lodge, office, store, and school furniture, including store stools, measuring machines, goods and book shelves, and other specialties, all of which were "to be made for and sold to the defendant only, during the term of this contract," and the defendant agreed "to purchase $250,000 worth of goods under this contract" of the plaintiff's assignor.

By the second contract the plaintiff's assignor was to make and deliver to the defendant, free on board at Chicago, goods manufactured by it, in such quantities and kinds as might be ordered by the defendant, of substantially the same character as provided in the first contract, and the orders of the defendant were to have a preference over all other work. After making provisions with regard to patterns and other matters not material to the present question, it was stipulated that the prices to be paid by the defendant, except for the iron parts or castings, should not exceed the prices charged by any other responsible manufacturer for like goods, and prices were specified for the iron parts. It was agreed that if the plaintiff's assignor fulfilled the covenants on its part the defendant should purchase of the plaintiff's assignor "during the period of this contract, and under its terms, goods or other articles to the amount of not less than $200,000," specifying the time and manner of payment for the same, and that "during the term of this contract the party of the first part

[plaintiff's assignor] shall not sell, either directly or indirectly, any of the goods or articles of the several kinds hereinbefore agreed to be made for and delivered to the party of the second part, within the following described territory: West of and including the following counties in Wisconsin: Ashland, Price, Taylor, Clark, Jackson, Monroe, Vernon, and Richland; and south of and including the following counties: Iowa, Dane, Jefferson, Waukesha, and Milwaukee; in Michigan, all the territory south of and including the following counties: Muskegon, Kent, Montcalm, Gratiot, Saginaw, Tuscola, and Huron; and all of the following named states and territories: Illinois, Indiana, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Arkansas, Missouri, Iowa, Minnesota, North Dakota, South Dakota, Nebraska, Kansas, Indian Territory, Texas, New Mexico, Colorado, Wyoming, Montana, Washington, Idaho, Oregon, Nevada, Utah, California, Arizona, and Mexico. Nor shall the party of the first part, during the term of this contract, sell any of said goods or articles to any person, firm, or corporation whom it knows or has good reason to believe intends to resell the same within said territory." It was further agreed "that, during the term of this contract, the party of the second part [the defendant] shall not sell, either directly or indirectly, any of the goods or articles of the several kinds hereinbefore agreed to be made for and delivered to it (except as hereinafter expressly provided) within the following described territory: In Wisconsin, all the territory east of the following counties: Ashland, Price, Taylor, Clark, Jackson, Monroe, Vernon, and Richland, and north of the following counties: Iowa, Dane, Jefferson, Waukesha, and Milwaukee; in Michigan, all of the territory north of the following counties: Muskegon, Kent, Montcalm, Gratiot, Saginaw, Tuscola, and Huron; and all of the following states and territories: Maine, New Hampshire, Ver-

mont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, West Virginia, Virginia, North Carolina, Tennessee, Kentucky, and Ohio. Nor shall the party of the second part, during the term of this contract, sell any of said goods or articles to any person, firm, or corporation whom it knows, or has good reason to believe, intends to resell the same within said last-described territory: provided, however, and it is expressly agreed, that the party of the second part or its agents may sell in any part of the United States the desk known as the 'Yale desk,' school apparatus and settees, and bank, office, and store furniture, and that any sale of said Yale desk, or any school apparatus or settees, or any bank, office, or store furniture, in any state or territory by the party of the second part or any of its agents, shall not be deemed a violation of this contract or any of its provisions. . . . A sum equal to twenty-five per cent. of the amount of any sale made by either of the parties in violation · of the provisions of the contract, as liquidated damages and not as a penalty, shall be paid by the party making any such sale, to the other party, but the delivery by either of the parties within the territory of the other, under and in performance of any existing contract, shall not be construed as a violation of this contract." It was further agreed that each of the parties should transfer to the other any agency or agencies it might then have, and the good will of any business it may have established within the territory of the other as thus defined; the plaintiff's assignor was to pay to the defendant a commission of five per cent. on the amount received for any goods or articles which might be thereafter delivered by it to any person, firm, or corporation within the territory of the party of the second part, under any then existing contracts; and, further, that the first-named contract should not be in force thereafter, but that this contract or any of its provisions

should not be construed "as waiving or releasing, or in any way impairing, any claim or right of action either party may have against the other under and by reason of said contract of February 8, 1889, or otherwise."

The first counterclaim is for damages for neglecting and refusing to manufacture $100,000 worth of goods ordered under the last-named contract, in the amount of $25,000, and for a claim for mistakes in filling orders, for not replacing castings that were imperfect and broken, and unreasonably delaying the shipment of goods ordered, the sum of $5,000; and in the sum of $3,000 for patterns not paid for or returned, furnished by the defendant under the second contract; twenty-five per cent. liquidated damages on damages sustained by the sale of nearly all the different kinds of manufactured goods specified in the contract in the defendant's district during the years 1890, 1891, 1892,— in the state of Illinois, on sales amounting to $40,000; in Indiana, $10,000; South Carolina, $5,000; Georgia, $10,000; Florida, $10,000; Alabama, $5,000; Mississippi, $5,000; Louisiana, $7,000; the state of Wisconsin, $10,000; Missouri, $15,000; Iowa, $10,000; Minnesota, $15,000; North Dakota, $5,000; South Dakota, $5,000; Nebraska, $10,000; Kansas, $15,000; Indian Territory, $1,000; Texas, $15,000; New Mexico, $4,000: Colorado, $10,000; Wyoming, $5,000; Montana, $8,000; Washington, $15,000; Idaho, $5,000; Oregon, $10,000; Nevada, $5,000; Utah, $7,000; California, $25,000; Arizona, $3,000; Mexico, $5,000; in territory in Wisconsin, in which it agreed not to sell, $20,000; in like forbidden districts in the state of Michigan, $50,000; in all, amounting to $365,000, upon which damages were claimed in the sum of $91,250.

The second counterclaim was for the sum of $5,000, founded upon a provision of the second contract above, to the effect that the plaintiff's assignor should pay to the defendant a commission of five per cent. on the amount the

plaintiff's assignor received for any goods or articles which it might thereafter deliver to any person, firm, or corporation within the defendant's territory under any then existing contracts, and which, in effect, was a part consideration for the defendant's stipulations; and it was alleged that the defendant had sold and delivered, for the plaintiff's assignor, such goods, wares, etc., to the amount of $100,000, and that it was entitled by the terms of said contract to a commission of five per cent., amounting to $5,000.

The plaintiff demurred separately to each of these counterclaims on the ground that it did not state facts sufficient to constitute a defense nor sufficient to constitute a counterclaim. The circuit court made an order overruling the demurrers, from which the plaintiff appealed.

For the appellant there was a brief by *Nash & Nash*, and oral argument by *L. J. Nash*. They argued, among other things, that all contracts restraining industrial or business freedom of a person or party are presumed to be void, and the *onus* lies upon those claiming to enforce them to prove their reasonableness. The facts relied upon to overcome such presumption must be alleged in the pleadings. Whether such presumption is overcome by the facts stated is a question of law. Greenhood, Pub. Pol., Rule 566, subd, 1, 2, pp. 720, 721; *Kellogg v. Larkin*, 3 Pin. 123; *Bowser v. Bliss*, 43 Am. Dec. 93; *Linn v. Sigsbee*, 67 Ill. 81. If the covenantee can in no way be benefited by trade restrictions, they are void, no matter how ample a consideration may have been given for such covenants. *Hubbard v. Miller*, 27 Mich. 15; *Chappel v. Brockway*, 21 Wend. 157; *Hitchcock v. Coker*, 6 Adol. & El. 438; Greenhood, Pub. Pol. 716. The counterclaim goes on the theory that restrictions of trade are presumptively valid, and this erroneous theory is challenged by the general demurrer. The restrictions of the second contract were not reasonable; they tended to monopoly and were opposed to a sound

public policy. *Kellogg v. Larkin*, 3 Pin. 123; *Maxwell v. Reed*, 7 Wis. 582; *Ulrich v. Hall*, 17 id. 424; *Laubenheimer v. Mann*, id. 542; *Miller v. Larson*, 19 id. 463; *Stearns v. Felker*, 28 id. 594; *Lemon v. Grosskopf*, 22 id. 447; *John v. Larson*, 28 id. 604; *Melchoir v. McCarty*, 31 id. 252; *Fairbank v. Leary*, 40 id. 637; *Lenz v. Brown*, 41 id. 172; *Clarke v. Lincoln L. Co.* 59 id. 655; *Washburn v. Dosch*, 68 id. 436; *Wells v. McGeoch*, 71 id. 196; *Berlin Mach. Works v. Perry*, id. 495; *Oregon S. N. Co. v. Hale*, 1 Wash. Ter. 283; *Alger v. Thacher*, 19 Pick. 51; *Taylor v. Blanchard*, 13 Allen, 370; *Arnot v. Pittston & E. C. Co.* 68 N. Y. 558; *Leonard v. Poole*, 114 id. 371; *Denver & N. O. R. Co. v. A., T. & S. F. R. Co.* 15 Fed. Rep. 650; *Western W. W. Asso. v. Starkey*, 84 Mich. 76; *Wright v. Ryder*, 36 Cal. 342; *Callahan v. Donnolly*, 45 id. 152; *Dean v. Emerson*, 102 Mass. 480; *Bishop v. Palmer*, 146 id. 469; *Stanton v. Allen*, 5 Denio, 434; *Craft v. McConoughy*, 79 Ill. 346; *Morris Run C. Co. v. Barclay C. Co.* 68 Pa. St. 173; *Hooker v. Vandewater*, 4 Denio, 349; *Gibbs v. Smith*, 115 Mass. 592; *Crawford v. Wick*, 18 Ohio St. 190; *Fisher v. Bush*, 35 Hun, 641; *Lange v. Werk*, 2 Ohio St. 520; *Lawrence v. Kidder*, 10 Barb. 641; *Anderson v. Jett*, 89 Ky. 375; *Emery v. Ohio C. Co.* 47 Ohio St. 320; *More v. Bennett*, 140 Ill. 69; *Strait v. National H. Co.* 18 N. Y. Supp. 224; *Texas Standard Cotton Oil Co. v. Adoue*, 83 Tex. 650; *Cummings v. Foss*, 40 Ill. App. 523; *Oregon S. N. Co. v. Winsor*, 20 Wall. 64.

For the respondent there was a brief by *Markham & Markham*, attorneys, and *J. D. Markham*, of counsel, and oral argument by *J. D. Markham*. They contended, *inter alia*, that this contract has no element of restraint of trade about it for the following reasons: (1) Although the Manitowoc company restricts itself as to certain lines of business under the contract, yet in those lines it is furnished employment by the Chicago company to the extent of at least $250,000; (2) The Manitowoc company is at liberty to

manufacture any sorts of furniture except those enumerated in the contract; (3) If it be the fact that these goods are to be manufactured under patterns furnished by the Chicago company, this case is analogous to those of patents; (4) There is not a feature of the contract tending to raising of prices to the public, or to a monopoly. (5) The facts may show that $250,000 of furniture is not much less than the capacity of the Manitowoc company. A vendor may bind himself to manufacture and sell exclusively to one person. *Van Marter v. Babcock,* 23 Barb. 633; *Donnell v. Bennett,* L. R. 22 Ch. Div. 835; *Schwalm v. Holmes,* 49 Cal. 665; *Long v. Towl,* 42 Mo. 545; *Singer S. M. Co. v. Union B. H. & E. Co.* 1 Holmes, 253; *Barber Asphalt Pav. Co. v. Brand,* 7 N. Y. Supp. 744; *Lightner v. Menzel,* 35 Cal. 452; *Central S. R. Co. v. Cushman,* 143 Mass. 353; *Arnot v. Pittston & E. C. Co.* 68 N. Y. 558; *Santa Clara Valley M. & L. Co. v. Hayes,* 76 Cal. 387. So, also, a vendee may agree to buy exclusively from one person. *Brown v. Rounsavell,* 78 Ill. 589; *Ebling v. Bauer,* 17 Weekly Dig. 497; Wharton's note, 11 Fed. Rep. 11; *Live Stock Asso. v. Levy,* 54 N. Y. Super. Ct. 32; 2 Chitty, Cont. (11th ed.), 986–7; Leake, Cont. 739; *Thornton v. Sherratt,* 8 Taunt. 529; *Holcombe v. Hewson,* 2 Camp. 391; *Jones v. Edney,* 3 id. 285; *Cooper v. Twibill,* id. 286, note; *Catt v. Tourle,* L. R. 4 Ch. App. 654; *Morris v. Colman,* 18 Ves. 437. An agreement to work as a servant or agent for another exclusively, for a certain number of years, is valid. Greenhood, Pub. Pol. 702; *Hartley v. Cummings,* 5 C. B. 247; *Pilkington v. Scott,* 15 Mees. & W. 657; *Wallis v. Day,* 2 id. 273; *Morris v. Colman,* 18 Ves. 437; *Diedrichsen v. Cabburn,* 2 Ph. 51; *Jackson v. Astley,* 1 Cab. & El. 181; *De Francisco v. Barnum,* L. R. 43 Ch. Div. 174. In the following cases, contracts for exclusive dealing with a particular person were held valid, and the cases have an analogy to the present one,— some go much beyond what we need to contend for: *Ward v. Hogan,* 11

Abb. N. C. 478; *Palmer v. Stebbins*, 3 Pick. 188; *Metropolitan T. Co. v. N. Y., L. E. & W. R. Co.* 45 Hun, 84; *Tonawanda V. & C. R. Co. v. N. Y., L. E. & W. R. Co.* 42 id. 496; *Richmond v. Dubuque & S. C. R. Co.* 26 Iowa, 191; *S. C.* 33 id. 422; *S. C.* 40 id. 264; *Railroad Co. v. Richmond*, 19 Wall. 584; *National Bank & L. Co. v. Todd*, 17 Hun, 548; *Dolph v. Troy Laundry M. Co.* 28 Fed. Rep. 553; *W. U. Tel. Co. v. A. & P. Tel. Co.* 7 Biss. 367; *W. U. Tel. Co. v. Chicago & P. R. Co.* 86 Ill. 246; *Stull v. Westfall*, 25 Hun, 1; *Altman v. Royal A. Soc.* L. R. 3 Ch. Div. 228; *George v. East Tenn. C. Co.* 15 Lea, 455; *Kinsman v. Parkhurst*, 18 How. 289; *Clay v. Powell*, 85 Ala. 538; *Turner v. Johnson*, 7 Dana, 435; *Jones v. Lees*, 1 Hurl. & N. 189; *Wiggins Ferry Co. v. Chicago & A. R. Co.* 73 Mo. 389; *Clark v. Crosby*, 37 Vt. 188; *Roller v. Ott*, 14 Kan. 609; *Keith v. Herschberg O. Co.* 48 Ark. 139; Greenhood, Pub. Pol. 683-4, 702. The principal cases in Illinois, in Wisconsin, and in the United States supreme court on contracts in restraint of trade, are as follows, none of them containing anything against the validity of this agreement: *Cobbs v. Niblo*, 6 Ill. App. 60; *Stewart v. Challacombe*, 11 id. 379; *Talcott v. Brackett*, 5 id. 60; *Linn v. Sigsbee*, 67 Ill. 75; *Brown v. Rounsavell*, 78 id. 589; *Just v. Greve*, 13 Ill. App. 302; *Craft v. McConoughy*, 79 Ill. 346; *Washburn v. Dosch*, 68 Wis. 436; *Berlin M. Works v. Perry*, 71 id. 495; *Laubenheimer v. Mann*, 17 id. 542; *Fairbank v. Leary*, 40 id. 637; *Fowle v. Park*, 131 U. S. 88; *Kinsman v. Parkhurst*, 18 How. 289; *Oregon S. N. Co. v. Winsor*, 20 Wall. 64. See, also, as to validity of agreements in restraint of trade, under the latest modern doctrine, *Leslie v. Lorillard*, 110 N. Y. 519; *Davies v. Davies*, L. R. 36 Ch. Div. 359; *Diamond Match Co. v. Roeber*, 106 N. Y. 473.

Pinney, J.   The agreement in question is in partial or limited restraint of the trade of both of the parties to it

Richards vs. The American Desk & Seating Co.

in certain lines of articles which were to be manufactured and sold by the plaintiff's assignor to the defendant, up to the amount of $200,000, and during a period of less than four years. By the terms of the agreement the plaintiff's assignor was prevented from selling, directly or indirectly, any other like articles of its manufacture during that time in a large part of Wisconsin and of Michigan, and in any part of thirty other states and territories of the United States, and a like restraint was imposed on the defendant as to the remainder of Wisconsin and Michigan, and all the other states of the Union. Both counterclaims are founded upon and grow out of the alleged breaches by the plaintiff's assignor of provisions of this contract, and are dependent upon its validity, but the more important one relates to a claim to recover twenty-five per cent. of the amount of sales alleged to have been made by the plaintiff's assignor within said period in the territory set apart exclusively to the defendant for making sales of such articles.

It will be seen from the statement of the case that the restraint against the plaintiff's assignor, alleged to have been violated, was total in all the states and territories named in it, except Wisconsin and Michigan, where it extended to parts only of those states, but it was limited in respect to the time it was to continue. That any agreement in restraint of trade of one of the parties to a contract is void, as being against public policy, unless founded upon a valuable consideration and limited, as regards time, space, and the extent of the trade, to what is reasonable under the circumstances of the case, is well settled, for the reason that such contracts tend to deprive the public of the services of parties in the employments and capacities in which they are most useful, and that they tend to expose the public to the evils of monopoly. *Kellogg v. Larkin*, 3 Pin. 123; *Laubenheimer v. Mann*, 17 Wis. 542; *Alger v. Thacher*, 19 Pick. 51; *Bishop v. Palmer*, 146 Mass. 469,

Richards vs. The American Desk & Seating Co.

473; *Oregon S. N. Co. v. Winsor,* 20 Wall. 66, 67; *Gibbs v. Consolidated Gas Co.* 130 U. S. 396; *Lange v. Werk,* 2 Ohio St. 519; *Gamewell F. A. Tel. Co. v. Crane,* 160 Mass. 50. These cases show, and many others might be cited to the same effect, that it is essential, in order not to be unreasonable, that the restraint imposed must not be larger than is plainly required for the protection of the party with whom the contract is made, and whether it is reasonable in a given case is a question, not of fact, but of law for the court. Poll. Cont. 366-368; *Washburn v. Dosch,* 68 Wis. 440.

The test as to whether the restraint is reasonable or not is well expressed in the often-cited case of *Horner v. Graves,* 7 Bing. 735, 743, where it is said: "The question is whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party can be of no benefit to either. It can only be oppressive; and, if oppressive, it is, in the eye of the law, unreasonable." It is said, in substance, in many cases that all restraints are presumed to be bad, but if the circumstances are set forth that presumption may be excluded, and the court is to judge of these circumstances whether the contract be valid or not. *Taylor v. Blanchard,* 13 Allen, 373; *Callahan v. Donnolly,* 13 Am. Rep. 172, and note; *Mallan v. May,* 11 Mees. & W. 653; *Lange v. Werk,* 2 Ohio St. 519; *Kellogy v. Larkin,* 3 Pin. 123; *Berlin Machine Works v. Perry,* 71 Wis. 495, 499, 501. It is held, in substance, in these cases that the pleading will be bad on demurrer if it does not appear from the contract or averments of extrinsic facts that the restraint was reasonable. This is in accordance with the great weight of authority, and seems to be the necessary result of the rule as to the validity of such restraint.

The great diffusion of wealth, the wonderful advances made in the methods and facilities for manufacturing and carrying on commerce, the manifold improvements in machinery and in the adaptation of steam and electricity as motive powers, have enlarged or opened numerous fields of industry and wrought marvelous changes, and the tendency of the later cases has been in relaxation of the earlier rule in relation to contracts in restraint of trade. The most liberal and advanced doctrine on the subject in this country is found in the case of *Diamond Match Co. v. Roeber*, 106 N. Y. 473, in which the history of the law is elaborately considered, and a covenant excluding a manufacturer of matches, who had sold his property, stock, etc., from engaging in the manufacture and sale of matches for a period of ninety-nine years within any of the states and territories, except Nevada and Montana, was sustained; but it appeared in that case that before such sale he had carried on the business of manufacturing friction matches, "and of selling the same in the several states and territories of the United States, and in the District of Columbia," and so the case really came within the rule under consideration, and the restraint was reasonably necessary to protect the other party in his purchase, in view of the circumstances disclosed. *Tode v. Gross*, 127 N. Y. 485, was in relation to a restraint imposed upon the vendor of a business founded on a secret process, but it recognizes and sustains the general rule. A manufacturing business founded upon the use of a secret process or the use of patented processes or means, is not understood to be within the rule. The cases of *Leather Cloth Co. v. Lorsont*, L. R. 9 Eq. 345, and *Rousillon v. Rousillon*, L. R. 14 Ch. Div. 351, are understood to represent the more modern views of the law on this subject in England. In the former case it was said: "All restraints upon trade are bad as being in violation of public policy, unless they are actually and not unreasonably for the pro-

tection of parties in dealing legally with some subject matter of contract." The same subject was considered in the somewhat recent case of *Davies v. Davies*, L. R. 36 Ch. Div. 359, in which COTTON, L. J., held the law to be "that a limited restraint may be good, provided the restraint is reasonable and such as was required for the protection of parties with whom the covenant is entered into," and that the rule ought not to be altered but by the House of Lords; and BOWEN, L. J., held substantially the same view, and notices that in that case the court had no materials for deciding that the covenant in question was beneficial to the public, or reasonably necessary for the protection of the covenantee, and, in substance, that to sustain it would be "leaping into the dark;" while FRY, L. J., was inclined to adhere to his decision in *Rousillon* v. *Rousillon, supra,* and hold that the burden of proof as to the validity of the restraint is shifted by showing that it has been entered into for the protection of the interests of one of the contracting parties.

The counterclaims and second contract, made an exhibit thereto, are exceedingly meager and wholly insufficient to show that the agreement of restraint insisted on by the defendant was reasonably necessary for the protection of its interests under the contract. While it appears by implication that the respective parties may have agencies in the territory set apart to each for the sale of the line of goods and wares mentioned in the contract, there is nothing to show the amount of annual output of these goods and wares by the plaintiff's assignor, or of the ordinary amount of manufacture and sale by either party, or that the defendant had established or carried on any trade in more than one state out of the thirty states and territories to which the restraint it seeks to enforce extends, and in respect to which it charges violations of this restraint by the plaintiff's assignor. The counterclaims wholly fail to

show that the defendant's interest for less than four years in the sale and disposition of $200,000 in value of the goods and wares mentioned, even upon the most liberal view of the subject, and under the existing state of trade and competition, would justify the very extensive restraint relied on. It follows from these views that, upon the face of the pleadings, it is not made to appear that the contract was a reasonable and valid one, and therefore the portions of the order appealed from are erroneous.

*By the Court.*— The parts of the order of the circuit court appealed from are reversed, and the cause is remanded with directions to sustain the plaintiff's said demurrers to the counterclaims.

As to validity of contracts in restraint of trade without limitation of place, see note to *Gamewell F. A. Tel. Co. v. Crane* (160 Mass. 50), in 22 L. R. A. 673.— REP.

