My Laundry Company, Respondent, vs. Schmeling, Appellant.

*October 13—November 7, 1906.*

(1–7, 9–13) *Contracts in restraint of trade or labor: Protection of business: Restraining breach: Pleading: Actual or threatened injury: Reasonableness of restraint: Good will: Consideration: Damages for violation during litigation: Equity: Fraud: Evidence.* (8, 16) *Appeal: Assignment of errors: Sufficiency of evidence: Points not argued.* (10, 17, 22) *Harmless errors.* (14) *Pleading: Counterclaim: Waiver of reply.* (15, 21–23) *Contempt: Costs and expenses, when recoverable: Counsel fees.* (17–19) *Reference: Vacating order: Resignation of referee: Hearing several matters together: Waiver of objection.*

1. In an action by the purchaser of an interest in a business to restrain the vendor from violating an agreement not to engage in the same kind of business in the same city, a complaint alleging that, contrary to such agreement, the vendor has engaged in such business by associating himself with others therein, and that the inevitable result of such connection, if it be permitted to continue, will be a large diminution in the value of the good will of the business purchased by plaintiff, sufficiently alleges that the restraint prayed for is necessary to the protection of plaintiff's business.

2. When a person sells out his interest in an established business and agrees not to enter into the same kind of business or be concerned in it in competition with that so sold, by necessary implication such agreement is material to the protection of such business.

3. An action to restrain the violation of such an agreement may be maintained if there has been an actual breach thereof which, unless restrained, will cause injury to plaintiff of a nature not remediable adequately at law; and it is not essential that actual injury should have been caused before the action is commenced.

4. One selling out his interest in a business may surrender, for a reasonable length of time and within reasonable limits as to territory, his liberty to engage in a competing business either as proprietor or as employee. The mere fact that such contract is in partial restraint of labor does not render it void as against public policy.

5. An agreement by the vendor of an interest in a laundry business that he will not for a period of five years engage in any manner in the laundry business in the same city, "either by conducting a laundry establishment on his own behalf or in conjunction or jointly with any other person, or by entering the employ of any other person, firm, or corporation engaged in such business, in the capacity of an officer, manager, solicitor, or any other capacity whatsoever," does not bind such vendor not to engage in any kind of labor for any person engaged in the laundry business, but only binds him not to engage in that business in any manner or capacity during the time and within the limits named. So construed the agreement is reasonable and valid.

6. For the protection of a business sold by him a person may partially restrict the scope of his activity whether he is a trader or not and whether or not the business sold has, as incident thereto, a good will.

7. Upon a sale for a specified consideration of an interest in an entire going business, including the good will thereof, the vendor agreed that for a certain time he would not engage in that business in the same city. *Held*, that such agreement entered into and became part of the equivalent for the price paid.

8. Where it is not assigned as error that the findings of the trial court are not supported by the evidence, the supreme court is warranted in not considering that question.

9. In an equitable action, upon the establishment of plaintiff's right to have the defendant restrained from violating his agreement not to engage in a certain business, the court may, in order to do complete justice in the matter and render unnecessary a resort to an action at law, award damages on account of a violation of said agreement during the litigation.

10. In an action to restrain the violation of an agreement defendant claimed that the clause alleged to have been violated had been included in the contract by fraud. He testified that in the oral agreement between the parties nothing was said of the matter in question; that he read only a few lines of the written contract, and then signed it upon the assurance of the attorney for the adverse party that it was according to the oral agreement; and that he read very little English, but took papers at home. The court found that he examined the paper with care; that it was read to him; that he then signed it; and that there was no fraud. *Held*, in view of the evidence admitted and the findings, that there was no harmful error in excluding defendant's testimony as to what kind of papers he took at home, or what language was used in his family, or whether if he had read the

contract he could have understood it, or whether he would have signed it had he known it contained the clause in question, or whether he intended to make the agreement expressed in that clause.

11. Defendant having violated his contract not to engage in the laundry business as an employee or otherwise, in an action to restrain such violation his purpose in going to work in a laundry was not material.

12. Evidence in such a case that defendant was dependent for a livelihood upon work in or about a laundry, was not admissible to show that the contract was unreasonable.

13. The reasonableness of a contract not to engage in a certain business is a matter of law to be determined from the contract itself, having regard to the limitations therein prescribed as to time and place and the purpose and scope of the restraint.

14. Where a trial proceeded from beginning to end upon the theory on both sides that the allegations of a counterclaim were in issue, a formal reply was waived.

15. A contempt proceeding to punish the violation of a temporary injunction is a proceeding in the action in which such injunction was granted, not independent of it.

16. Generally an assignment of error without any attempt to support it by argument in the brief or orally will not be considered on appeal.

17. The denial of a motion to vacate an order of reference because of prejudice of the referee, if error, was not harmful where the referee afterwards resigned and another was appointed.

18. The rule that, except as provided in sec. 2832 or sec. 2879, Stats. 1898, a judgment or final order cannot be vacated by the court entering it after the term of entry, does not preclude the appointment at any time of a new referee in place of one who has resigned and the vacation of the order appointing the first referee.

19. Where without objection a referee heard together two matters in the same action which had been referred to him, and no exception to his report on that ground was made in the trial court, the refusal to set aside the report will not be held erroneous on that ground.

20. The facts that, after sale of his interest in a laundry business, defendant violated his agreement not to engage in that business in the same city, that employees left the service of plaintiff and were hired by the concern with which defendant was connected, and that the places thus vacated were filled by plaintiff at increased expense, do not entitle plaintiff to recover such increased expense as damages for defendant's breach of

the agreement, in the absence of evidence that such employees broke a contract in leaving plaintiff's service or that they would have remained with plaintiff for some length of time, ascertainable with reasonable certainty, if they had not been offered the opportunity to take service in the concern with which defendant was connected.

21. Under sec. 3490, Stats. 1898, in a contempt proceeding to punish a defendant who had violated a temporary injunction, although no actual loss or injury to plaintiff was shown, defendant was properly ordered to pay to plaintiff the costs and expenses incurred by the latter in prosecuting the proceeding.

22. Where in such case only the amount of plaintiff's costs and expenses was ordered to be paid, the wording of the order and judgment, directing it to be paid "to indemnify plaintiff for its actual loss and injury . . . and to satisfy its costs and expenses," etc., was a harmless irregularity.

23. Expenditures of the plaintiff for counsel fees are recoverable in such a proceeding, as proper items of expense.

APPEAL from judgments and orders of the circuit court for Milwaukee county: E. RAY STEVENS, Judge. *Modified and affirmed.*

Action to restrain defendants from violating a contract not to engage in or be concerned in the laundry business.

The differences between the parties, as indicated by the complaint, answer, and reply, are shown with sufficient clearness for the purposes of this appeal by the following summary of the findings:

(1) Plaintiff is a duly organized corporation engaged in general laundry business in the city of Milwaukee. (2) Defendant for the last twenty years has been a resident of said city. (3) For some time prior to October 3, 1903, defendant and Eugenie M. Comstock were copartners in the laundry business in said city of Milwaukee, said defendant spending most of his time in outside work and the success of the business being largely due to his ability to secure customers. (4) On said date by mutual consent such copartnership was dissolved and defendant sold his interest in the copartnership property for $3,500, the agreement in that regard being re-

duced to writing. (5) As part of the sale contract defendant agreed, in these words, not to enter the laundry business:

"The said *August W. Schmeling* does further promise and agree and covenant to and with the said Robert W. Mueller and to and with the said Eugenie M. Comstock and their assigns, that he, the said *Schmeling,* will and shall not, for a period of five (5) years from the date hereof, engage in any manner in the laundry business in the city of Milwaukee, either by conducting a laundry establishment on his own behalf or in conjunction or jointly with any other persons, or by entering the employ of any other person, firm, or corporation engaged in such business, in the capacity of an officer, manager, solicitor, or any other capacity whatsoever."

(6) The contract was read to the defendant and he examined it with care and signed it. He was not induced to do so by any fraud or misrepresentations. Previous to the commencement of this action he entered the employ of the Badger Laundry Company, a concern engaged in carrying on laundry business in the city of Milwaukee. (7) After the commencement of this action and while a temporary injunctional order granted in the case restraining defendant during the litigation from violating his agreement as to being concerned in the laundry business was in full force, he built on lands owned by him in the city of Milwaukee a building peculiarly adapted to such business, borrowing $3,000 for that purpose, and refused to rent the building to a laundry concern desirous of securing the same, but leased it to one Piehler, who was not of sufficient means to conduct a laundry business without assistance from the defendant's wife. Defendant bought the machinery with which to equip the building and business and paid partly therefor by checks on his own bank account and prepared the premises for such business. He conducted the negotiations leading up to the partnership relations between his wife and Piehler and subsequently participated in negotiations resulting in the formation of the Sanitary Laundry Company, a corporation formed to carry on laundry business

in the city of Milwaukee, which corporation was composed of defendant's wife, Piehler, and W. A. Hayes. After the laundry was started defendant was in and around the same and took part to some extent in its management. His wife had no knowledge of such business and relied on him in the matter. The said laundry business was started by the assistance of defendant's wife as a subterfuge for the purpose of avoiding the order of the court and the provisions of defendant's contract aforesaid. The said laundry company has hired help employed by the plaintiff company and taken customers from plaintiff through the association of the defendant with the said laundry company and the use of his name in the business. (8) After the making of said agreement between the defendant and R. W. Mueller a copartnership was formed between the latter and Eugenie M. Comstock to which was transferred the property, assets, stock in trade, and the good will formerly owned by the defendant and said Comstock, and thereafter plaintiff company was formed and all such property was sold thereto, including the benefits of the contract made by defendant as aforesaid, which benefits were necessary to protect the good will of the business in the possession of the new owner as successor to defendant and Eugenie M. Comstock. (9) Plaintiff now owns the beneficial rights under such contract which has been violated by defendant to plaintiff's damage.

As conclusions of law the court found that the restraint upon the liberty of the defendant provided for in his contract was fairly protective only of the interests of the plaintiff and not so large as to interfere with the interests of the public; that the contract was valid, and that an interlocutory judgment should be, therefore, entered in accordance with the findings, reserving the question of damages till the coming in of the report of the referee to be appointed to take evidence and ascertain the same.

The judgment so provided for was accordingly entered and

the matter of ascertaining the damages recoverable was referred to Hon. Fred. Scheiber.

Proceedings were commenced in due form to punish the defendant for contempt in having violated the temporary injunctional order, as set forth in the foregoing findings, in which he was in due form found guilty and the matter of ascertaining the sum necessary to indemnify plaintiff for the actual loss caused to him by the defendant's said contemptuous conduct and the amount necessary to indemnify plaintiff for costs and expenses in the contempt proceedings were referred to said Scheiber, and it was ordered as punishment for the defendant's conduct that immediately upon the referee's report being confirmed defendant should pay plaintiff's attorney the sum finally determined to be necessary for indemnity, as aforesaid.

Special proceedings were instituted on behalf of defendant to vacate the reference to Mr. Scheiber on the ground of prejudice. The application was denied. Thereafter Mr. Scheiber resigned his position as referee and later, at a term of court subsequent to that of his appointment, on application of the plaintiff, the orders in that regard were formally vacated and the matters involved were referred to Hon. W. J. McElroy, who subsequently performed the duties of referee in the matter and reported the evidence taken by him and his conclusions to the court. Such conclusions were to this effect: By reason of the breach of the agreement set forth in the complaint plaintiff was compelled to incur extra expense for an engineer to the amount of $66, $8 extra expense for filling the place of another employee, and $95 for services of an attorney. By reason of the violation of the temporary injunctional order plaintiff was damaged to the extent of $19.25 for a copy of the testimony and $409.84 for attorney's services. There was a motion to set aside such report, which was denied. Thereafter, on application of the plaintiff, the report was modified by striking out the item of $95, and as

so modified was confirmed. Judgment was thereafter perfected in the main action, the recoverable damages therein being placed at $74, and judgment was also perfected in the contempt proceedings, defendant being required within ten days to pay plaintiff's attorney $429.09 as indemnity for actual loss and injury to plaintiff by defendant's violation of the temporary injunction, and to satisfy its costs and expenses arising out of such misconduct.

Exceptions were taken on behalf of the defendant to preserve for review the questions referred to in the opinion. The defendant appealed from the judgment in the main action and in the contempt proceedings and from various orders affecting such judgments.

*W. A. Hayes,* for the appellant.

*C. H. Hamilton,* for the respondent.

MARSHALL, J.    There is no assignment of error that the findings of fact or any of them are contrary to or not supported by the evidence. Some branches of the appellant's argument refer to that subject, but as there is no assignment of error, specially, in respect thereto we shall not examine any question in that regard, except where it is deemed to be necessarily called for by some assignment of error as to rulings on motions.

I.

The first four assignments of error relate to the subject of whether the complaint states a cause of action. The various propositions suggested for consideration, so far as they seem material, will be treated in their order.

1. There is no allegation in the complaint that the restraint sought to be imposed on the defendant is necessary to the protection of plaintiff's business.

The complaint contains this allegation:

"Notwithstanding said agreement, and contrary to the terms thereof, the said defendant has nevertheless again en-

gaged in the laundry business in the city of Milwaukee by associating himself with the Badger Laundry, . . . and that the inevitable result of said connection, if the same be permitted to continue, . . . will be a large diminution in the value of the good will of said business."

That seems to sufficiently negative the proposition. Moreover, when a person sells out his interest in an established business and agrees not to enter into the same kind of business or be concerned in it in competition with that so sold, by necessary implication such agreement is material to the protection of such business.

2. There is nothing in the complaint showing that defendant before the commencement of the action breached the agreement by doing anything injurious to the plaintiff.

What has been said is a sufficient answer to that proposition. It was not essential that actual injury should have been caused before the commencement of the action in order to enable respondent to maintain the same. It was sufficient that there was an actual breach of the agreement mentioned,. which, unless restrained, would cause injury to plaintiff of a nature not remediable adequately in an action at law.

3. The contract is one in restraint of labor and is invalid on that ground.

We are not favored with any authority to the effect that one may not in selling out his interest in a business surrender, for a reasonable length of time and within reasonable limits as to territory, his liberty to engage in a competing business, either as proprietor or employee. It would seem that the same rule which permits a person in selling out his interest in a business, as a part of the transaction to restrict his liberty to impair the value of the thing sold by engaging in the same kind of trade in one capacity, would justify restraining such liberty as to engaging in such business in any other capacity. That contracts of the former character, reasonable as to time and space, are valid is not questioned.

They have been sustained by this and other courts generally. *Berlin M. Works v. Perry,* 71 Wis. 495, 38 N. W. 82; *Richards v. Am. D. & S. Co.* 87 Wis. 503, 58 N. W. 787; *Palmer v. Toms,* 96 Wis. 367, 369, 71 N. W. 654; *Tecktonius v. Scott,* 110 Wis. 441, 86 N. W. 672; *Cottlington v. Swan,* 128 Wis. 321, 107 N. W. 336; *Ross v. Sadgbeer,* 21 Wend. 166; *Cowan v. Fairbrother,* 118 N. C. 406, 24 S. E. 212; *Hoagland v. Segur,* 38 N. J. Law, 230; *Perkins v. Clay,* 54 N. H. 518; *Guerand v. Dandelet,* 32 Md. 561; *Warren v. Jones,* 51 Me. 146; *Anchor E. Co. v. Hawkes,* 171 Mass. 101, 50 N. E. 509; *Hitchcock v. Anthony,* 83 Fed. 779, 28 C. C. A. 80; *Sternberg v. O'Brien,* 48 N. J. Eq. 370, 22 Atl. 348; *Barr v. Craven,* 89 L. T. Rep. 574; *Diamond M. Co. v. Roeber,* 106 N. Y. 473, 13 N. E. 419; *Wood v. Whitehead Bros. Co.* 165 N. Y. 545, 59 N. E. 357; *Nat. E. & S. Co. v. Haberman,* 120 Fed. 415; *Bancroft v. Union E. Co.* 72 N. H. 402, 57 Atl. 97.

The reason of the rule aforesaid, in terms or effect, is stated in the cases cited this wise: Inasmuch as public policy requires that a man should be free to sell in the most advantageous way what he has obtained by his skill or other means, the same policy should permit him to enter into restrictive agreements in aid of the thing sold, provided the restrictions, in the judgment of the court, are not unreasonable, having regard to the subject matter of the contract.

If the scope of the contract here were so broad as counsel for appellant contends, there might be some question as to its validity in its entirety. It is argued that the language "in any manner, either by conducting a laundry establishment on his own behalf or in conjunction or jointly with any other persons, or by entering the employ of any person, firm, or corporation engaged in such business, in the capacity of an officer, manager, solicitor, or any other capacity whatsoever," if enforced, would deprive appellant of liberty to pursue any manner of labor for any person or concern engaged in the

laundry business. It does not seem so. The words "in the capacity of an officer, manager, solicitor, or any other capacity whatsoever" refer to the words "engage in any manner in the laundry business in the city of Milwaukee." The real meaning is that appellant shall not engage in the laundry business by entering into the employ of a person engaged in such business to work therein in any capacity whatever. Like contracts have been elsewhere similarly construed.

In *Barr v. Craven,* 89 L. T. Rep. 574, the facts were that an agent of an insurance company employed to serve in a particular district contracted "that he would not interfere directly or indirectly with the business" after resigning or being dismissed from his agency. The contract was construed to mean the business of the society in the district in which the agent contracted to aid it, and as so construed it was held valid.

*Sternberg v. O'Brien,* 48 N. J. Eq. 370, 22 Atl. 348, seems to touch this case in respondent's favor at all points. The defendant entered the employ of the plaintiff, who was engaged in the instalment clothing business, in the capacity of collector, agreeing in consideration of the employment that for one year after its termination "he would not engage in or be concerned or interested in the instalment clothing business, in the city of Newark or Jersey City, on his own account, or as the agent or employee of any other person or persons, in any capacity." The court construed the contract as if it read will not engage in or be concerned or interested in the instalment clothing business in the city of Newark or Jersey City in any capacity, saying:

"It thus appears that the defendant's promise is that he will not take employment in a particular business in any capacity. When, therefore, the whole of the restrictive clause is read, it is made entirely plain that the restraint which the defendant put upon himself is not general, but partial, and that the only thing which he has prevented himself from doing, after he ceases to be an employee of the complainant, is

engaging in or being concerned or interested in the instalment clothing business.    He cannot serve or assist a rival business. in any capacity, in either of the two cities named, but the interdiction is confined to that particular business.    As to any other business or employment he is unbound and free.    Anything outside of the instalment clothing business he is just as much at liberty to do for a rival of the complainant as though he had not made the contract in question."

The position taken that the agreement was a restriction upon the right to labor was condemned and the contract held valid.    We have quoted at considerable length from the opinion, as it meets with our approval and covers fully the point raised by appellant's counsel.

There are many cases in the books in harmony with the foregoing.    In *Hitchcock v. Anthony,* 83 Fed. 779, 28 C. C. A. 80, an agreement was sustained of a person, who purchased from another some land adjacent to that used by such other in conducting a coal and fish business, not to engage in the coal or fish business for a specified term of years, "or to do anything that will conflict with the said coal or fish business of the grantor."

In *Lange v. Werk,* 2 Ohio St. 519, an agreement not to "establish or be connected either directly or indirectly with any person (without the consent of the other party to the agreement) in the tar candle business," was condemned solely because it was not reasonably limited as to territory.

In *Alger v. Thacher,* 19 Pick. 51, an agreement not to "at any time hereafter in his own name, or in the name of another, conduct, carry on, use, or employ the art, trade, or occupation of an iron founder or caster, or be concerned, interested, employed or engaged, directly or indirectly, in any manner whatsoever, or under any pretense whatsoever, in the business of founding or casting iron," was held void only because of its being unlimited as to time and space.

In *Guerand v. Dandelet,* 32 Md. 561, an agreement, limited as to time and space, not to "directly or indirectly com-

pete" .with the vendee in conducting the business leased by the party so agreeing, was sustained.

In *Cowan v. Fairbrother,* 118 N. C. 406, 24 N. E. 212, an agreement by the vendee of a printing business, limited as to time and space, not to "edit, print, or conduct a newspaper or magazine, nor be in any wise connected with one printed anywhere" within the territory mentioned, was sustained.

The foregoing precedents seem to sufficiently answer the claim of appellant's counsel that the contract in question is void as a general restraint upon the right to labor, and the claim that the agreement is contrary to public policy. The appellant is free to engage in the city of Milwaukee in any kind of business except the laundry business. He is free to accept employment of a rival in such business in such city outside of the competing business. He is free to engage in the laundry business outside of Milwaukee at any time, and therein after the five-year period. The restraint is limited to the kind of business sold and as to time and space in a manner commonly sustained, as we have seen. Such restrictions satisfy every essential of the doctrine lately announced in *Cottington v. Swan,* 128 Wis. 321: "The restraint imposed is reasonable, under the circumstances, with reference to the situation, business, and object of the parties." It was "contracted for . . . the protection of the legitimate interests of the party in whose favor it is imposed." It "is reasonable as between them [the parties] and not specially injurious to the public." Reasonableness between the parties has reference to time, space, purpose, and scope. If all the tests in that regard are satisfied the public interests are satisfied. The time and space must not be so great as to have the effect of a general restraint. The purpose must have reference to the protection of the business sold, or in which the party restrained is in some capacity engaged, and which is reasonably benefited by the restraint. The scope of the restraint must be germane to such purpose.

Our attention is earnestly directed to what was said in *Palmer v. Toms,* 96 Wis. 367, 369, 71 N. W. 654, where the court mentioned one of several exceptions to the general rule that contracts in restraint of trade are not permitted. The exception had reference to reasonable restraints upon the liberty of a person as to engaging in business injurious to the good will of a business sold by him, imposed as an aid to the sale. It seems to be thought that the court restricted such contracts to those made wholly for the protection of good will. That is not strictly accurate. The court mentioned one exception to a general rule which was appropriate to the case. One may by contract, legitimately, partially restrict the scope of his activity for the protection of a business sold by him or in which he is engaged, whether he is a trader or not and whether the business sold has, as incident thereto, a good will. The restriction may extend to his engaging in a competing business as proprietor or in any other capacity, subject to the limitations suggested. This sufficiently answers all contentions of appellant's counsel up to the next stated proposition.

4. Neither plaintiff nor its successors paid anything for the good will claimed.

The written evidence of what defendant sold and what was acquired by plaintiff shows that it was an entire going business, including the good will thereof and all property in use in connection therewith, and that $3,500 was paid therefor. It seems to follow, necessarily, that the thing sought to be protected by the restraint imposed on the liberty of the defendant was the subject of the sale and that such restraint entered into and became part of the equivalent for the $3,500.

5. The next proposition is that there is no evidence supporting the findings and judgment for an injunction.

As stated at the outset, there is no assignment of error that the findings are not supported by the evidence. That would warrant us in not examining the record as to this proposition. However, we have examined the same sufficiently to

satisfy us that the findings as to appellant's having violated his agreement are not against the clear preponderance thereof.

6. The court erred in awarding plaintiff damages.

That is predicated on the theory, in part, that the complaint contains no claim for damages, which seems contrary to the fact; and again upon the theory that no damages were recoverable except such as were suffered before the action was commenced. In an action of this sort it is sufficient to allege an actual breach of the agreement and that damages have accrued, or will accrue, unless the court interferes to prevent a continuance of the breach, which will otherwise occur, and allegations otherwise bringing the case under a recognized head of equity jurisdiction. In case of the primary right involved being established in favor of the plaintiff, the court having jurisdiction of the parties and subject matter may properly, in order to do complete justice in the matter, rendering it unnecessary to sue at law for damages happening during the litigation, as ancillary to the principal matter of relief, award plaintiff compensation for such damages. The rule on that subject is quite ancient.

In *Nelson v. Bridges*, 2 Beav. 239, the facts were that during the pendency of a suit for specific performance of an agreement the subject of such agreement was in part taken away by the defendant, but the matter was not brought to the attention of the court before judgment in plaintiff's favor as to the primary right. Upon an application for relief in the action Lord LANGDALE said:

"If that circumstance had been known at the first hearing, I cannot have the least doubt but that the court would, in the exercise of its jurisdiction, have put in a due course of investigation the question of the amount of compensation which ought to be made to the plaintiff."

It being suggested that relief could be obtained or might have been obtained at law he said:

"I am of the opinion that it is not necessary for this court when it has once entertained jurisdiction in a case to resort

to that circuitous mode of giving relief; I think, moreover, that if this matter had been before the court at the first hearing, it would have been put in a proper train of investigation."

## II.

The fifth and sixth assignments of error cover matters indicated in the propositions following.

1. The court improperly excluded evidence offered by the defendant showing that the clause of the agreement claimed to have been violated, restraining the defendant from being concerned in a rival laundry business as an employee, was included in such agreement by fraud.

Appellant testified at length that he did not read the writing before signing; that in the oral agreement nothing was said as to his not working in a laundry; that he read a few lines of the writing and then signed it relying upon Mr. Comstock's assurance—acting for the adverse party—that it was according to the oral agreement; that he read very little English, but took papers at home. He·was not permitted to testify as to what kind of papers he took or what language was used in his family, or whether if he had read the contract he could have understood it; or whether he would have signed it had he known of its containing the objectionable clause; or whether he intended to forego his right to be employed in a laundry. We are unable to see any harmful error in the exclusion of such evidence in view of the evidence which was permitted. When the defendant testified that he did not read the paper; that he read very little English; that the original agreement did not contain anything as regards his not taking employment in a rival business, and that he signed the paper relying upon Comstock's assurance that it was drawn according to the oral understanding, he covered everything that was material from his standpoint, especially in view of the court's findings of fact.

The court did not hold, as it seems, that if appellant did

not know the. contents of the paper he was necessarily bound
by reason of inexcusable negligence, but found specifically
that he examined the paper with care; that it was read to
him; that he then signed it, and that no fraud was perpe-
trated upon him in the matter.    With his statements that he
did not read the paper, that it was not read to him, and that
he relied wholly upon the assurance of Mr. Comstock as to
its contents, disproved to the satisfaction of the court, it is
not probable that the result could have been different though
the excluded evidence, if proper, had been received.    There-
fore, in any event, the exclusion was not harmful.

2. The court improperly excluded evidence as to appel-
lant's purpose in going to work for the Badger Laundry
Company.

We are unable to see any materiality to such evidence.    If
what he did constituted a violation of his agreement, whether
he had such a purpose in view or not could not affect the mat-
ter.    He was permitted to testify fully as to the capacity in
which he was employed by the .Badger Laundry Company,
which was that of bookkeeper and general office work, and
clearly within the prohibition of the contract.

3. The court improperly excluded evidence tending to show
the unreasonable nature of the contract.

The evidence excluded was directed to the subject of
whether appellant was dependent for a livelihood on work in
or about a laundry.    We are unable to see that such circum-
stance, had it been established, could have affected the result.
As we have seen, whether such a contract is reasonable or un-
reasonable is a matter of law to be determined from the writ-
ing, having regard to the limitations as to time and place and
the purpose and scope of the restraint.    They being reason-
able, all essentials of a valid contract are present, because
even if the party restrained of his. liberty is deprived, par-
tially, from participating in a particular vocation for a limited
period, there is left ample opportunity for him to do so out-
side of the territory covered by his agreement.

### III.

The next assignment of error is that the court erred in denying defendant judgment on his counterclaim.

That is based on the theory that there was no reply. There are two answers to that. *First.* Though no reply is found in the record, the court in the decree recited that there was one in fact. *Second.* The trial proceeded from the beginning to the end upon the theory on both sides that the allegations of the counterclaim were in issue. That was a waiver of any formal reply. *Killman v. Gregory,* 91 Wis. 478, 65 N. W. 53; *Bowman v. Van Kuren,* 29 Wis. 209.

### IV.

The next two assignments of error refer generally to this proposition: The contempt proceedings must fail, for such proceedings cannot be maintained independently of the action.

That proposition seems to be grounded on the theory that neither the facts alleged nor those proved show any ground for the action, and that the findings of fact are contrary to the evidence. Those matters are all sufficiently answered in other parts of the opinion. Certainly the contempt proceeding was in the action, not independent of it. The complaint stated a cause of action and the facts found both in the main action and the contempt proceedings show a violation of the temporary injunction. There is no assignment of error, as we have seen, that such findings are contrary to the evidence, and, if it were otherwise, our examination of the record leads us to the conclusion that counsel's contention would have to be overruled.

### V.

Error is further assigned upon the exclusion of evidence offered by the defendant upon the issue of contempt.

Under this head we are referred to several pages of the printed case where it is shown that the evidence of witnesses

tendered by appellant was excluded, but the error claimed is not supported by argument in the brief, nor was it orally. Generally speaking, an assignment of error without any attempt to so support it is not considered on appeal. *Butler v. State,* 102 Wis. 364, 78 N. W. 590; *Cornell v. State,* 104 Wis. 527, 80 N. W. 745; *Nix v. C. Reiss C. Co.* 114 Wis. 493, 505, 90 N. W. 437. That has not been strictly applied here, but will be as to treating the matter in detail in this opinion. We are unable to discover any harmful error in any of the rulings on evidence found at the pages of the printed case suggested. Some of the questions called for mere conclusions and were ruled out on that ground. Some of the questions were ruled out as leading. Some of the evidence was stricken out as not responsive. Some of the questions were asked upon the mistaken theory that the agreement was void as a general restraint upon the appellant. It is considered that no harmful error, if error at all, was committed by the court in this field.

## VI.

Complaint is made because the court denied the motion to vacate the reference to Mr. Scheiber on the ground that he was prejudiced.

Appellant's motion in that regard was heard on affidavits and denied, as it appears, because the proofs were not sufficient to sustain his claim. We are unable to see wherein the court clearly committed error at that point, but in any event it was not harmful, since Mr. Scheiber resigned, the orders appointing him were in form vacated, and Hon. W. J. Mc-Elroy was appointed referee in his place.

## VII.

Further error is claimed because the court vacated the order of reference to Mr. Scheiber.

The idea of counsel at this point is that the rule that a judgment cannot be vacated by the trial court after the term

at which it was entered, except under sec. 2832 or sec. 2879, Stats. 1898, applies, and that the matter is governed by *Whitney v. Karner,* 44 Wis. 563; *Turner v. Nachtsheim,* 71 Wis. 16, 36 N. W. 637; and *Dufur v. Home Inv. Co.* 122 Wis. 470, 100 N. W. 831, and similar cases. True, except in case of mistake, inadvertence, surprise, or excusable neglect within sec. 2832, or an application for a new trial on newly-discovered evidence under sec. 2879, a judgment or final order in an action cannot be vacated by the court entering it after the term of the entry. That does not apply to those necessary orders in the progress of a case essential to its termination, such as one to fill the office of referee after the resignation or removal by the court of one previously appointed. Here, the first referee declined to serve by resigning. The only effect of the order complained of was to recognize the existence of the office as vacant and to fill it in order that the case might proceed. The court at all times has general authority over its referees, to remove them for cause and to afford the parties the benefit of such an instrumentality in determining the truth of the matters in controversy, by refilling the office. 17 Ency. Pl. & Pr. 1085. That must necessarily include authority to change the terms of an order of reference by naming a new referee whenever the place as first filled shall have become vacant by any means. Unless the law permitted such action our system of procedure would be quite infirm. The following cases bear on the question: *Parkhurst v. Berdell,* 87 N. Y. 145; *Forrest v. Forrest,* 3 Bosw. 650; *Norvell v. Gibson,* 6 Mo. App. 581.

In *Forrest v. Forrest, supra,* the court vacated the order of reference after a lapse of some three years, because the referee did not proceed expeditiously to close up the matter referred to him. In disposing of the subject this language was used by WOODRUFF, J.:

"The court would not of course compel a referee to act, against his inclination . . . when there are, no doubt, many

who are not only willing but desirous of rendering such services. . . . That the court can vacate the order of reference and direct a reference to some person whose engagements are such that the reference will be proceeded in with reasonable dispatch is not doubtful."

## VIII.

The next claim is that the court erred in refusing to set aside the report of the referee.

The motion was based on want of evidence to support the findings. Some complaint is now made because the referee heard the two matters referred to him together, but no exception seems to have been made to the report on that ground, and if there were we should be constrained to hold that there was no harm done appellant by the procedure. Moreover, it does not appear that there was any objection at the hearing before the referee to the trial of both of the referred matters together.

On this branch of the case it is insisted that there was no proof produced before the referee of damages caused by the breach of appellant's agreement as set forth in the complaint, though the referee found that there were such damages to the amount of $169 and the court confirmed the finding as to $74. True, all the evidence offered on that matter was directed to loss caused after the commencement of the action. So it was inaccurate to characterize the damages found as was done. However, that is not material. The more serious question is whether such damages were established. They were composed of $66, increase in expense of filling the place of engineer, because of an employee in such place going over to the Sanitary Laundry Company, and an increase of $8 in the cost of filling the place of another employee from the same cause.

There was ample evidence that the two employees left the service of respondent and were hired by the Sanitary Laundry Company, with which appellant was connected, and that

the places thus vacated were filled at the increased expense found by the referee. There was no direct evidence that such employees were influenced to do as they did by appellant, but conceding that the court was warranted in finding from the circumstances that "the said Sanitary Laundry Company has hired help employed by the plaintiff company and taken customers from the plaintiff through the association of the defendant with the said Sanitary Laundry Company and the use of his name in the business thereof," and that such finding was binding on the referee, as it probably was, there was left to the latter the duty of determining whether respondent actually suffered loss by such conduct of appellant and, if so, how much.

On the subject of increased expense there was ample evidence, but there seems to be this serious infirmity in the proof: It does not appear that either of the employees broke any contract with respondent in leaving its employ, or how long they would have remained with respondent after the time they left its service but for the conduct of appellant. That was left by the proof to mere conjecture, since the employees were under no obligation to so remain. On the whole, we cannot see any sound basis for charging the increased cost of filling their places to appellant. The learned referee, seemingly, concluded that such cost was so chargeable as a necessary result of the finding that the Sanitary Laundry Company hired the employees after they left the service of respondent. We do not think such result would necessarily follow. Unless such employees would have remained with respondent for some length of time, ascertainable with reasonable certainty, had the opportunity not been offered them of taking service with the Sanitary Laundry Company, there would be no definite basis for charging the increased wages paid to fill their places to appellant. It appears that they were working for respondent by the week. It was their right at the end of any week to terminate the service.

## IX.

The further point is made that there was no proper basis shown for charging appellant in the contempt proceedings with the costs and expenses incurred by respondent therein, because no actual loss was shown. That matter is governed by the statute (sec. 3490, Stats. 1898), which provides that:

"If an actual loss or injury has been produced to any party by the misconduct alleged the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant. . . . Where no such actual loss or injury has been produced the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings."

It will be seen from the wording of the statute that indemnity refers to actual loss, but that the imposition of costs and expenses does not depend upon there being such loss. Without that element, under the rule in *Emerson v. Huss,* 127 Wis. 215, 106 N. W. 518, a fine should be imposed to go into the school fund when paid, but costs and expenses follow the conviction just the same as if there was actual loss. It is considered that the purpose of the statute is that such costs and expenses shall go to the party incurring them. That subject was not involved in *Emerson v. Huss, supra.* In a civil contempt proceeding there is no reason, it seems, why the costs and expenses should not go to the complainant upon a conviction of the alleged wrongdoer the same in one case as in another. The party making the expenditures in either is the complainant. Therefore, if they are to be paid at all by the wrongdoer it would require some unmistakable language in the statute to warrant holding that they constitute a part of and follow the fine proper. True, the words of the statute "the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings" rather suggest that the fine, in the whole, includes the costs and expenses, but the ascertainment of those elements is

plainly contemplated, the purpose being, it is thought, that it is the net fine only, as in other cases, which shall go to the school fund, and that the balance, as in such cases, shall go to reimburse the party making the expenditure. Sec. 2, art. X, Const.; *State v. De Lano,* 80 Wis. 259, 49 N. W. 808.

The supreme court of Michigan in considering its statute corresponding to our sec. 3490, Stats. 1898, exclusive of the last sentence, in *Holland v. Weed,* 87 Mich. 584, 49 N. W. 877, held a finding of actual loss to be indispensable to the imposition on the wrongdoer, for the complainant's benefit, of the latter's costs and expenses in the proceedings. It seems, however, that such conclusion was arrived at without reference to a companion statute, which is substantially identical with the last sentence of such sec. 3490. We are constrained not to follow the Michigan decision. It seems that had the court there construed the two sections together a different conclusion would have been reached.

The language of the court's findings and judgment is "that as punishment for his said misconduct, the said *August W. Schmeling* do . . . pay over to the attorney for plaintiff the said sum of four hundred and forty-nine and 9–100 dollars ($449.09), to indemnify the plaintiff for its actual loss and injury . . . and to satisfy its costs and expenses arising out of such misconduct on the part of said defendant." The actual loss spoken of in the statute is such as an action will lie for. *In re Pierce,* 44 Wis. 411; *State ex rel. Lanning v. Lonsdale,* 48 Wis. 348, 4 N. W. 390. That of course does not include costs and expenses of prosecuting the contempt proceedings. The items found by the referee and included in the final result are wholly of that character. So no sum should have been awarded to the respondent as for indemnity. The wording of the final order and judgment in that regard is irregular, but appellant was not harmed, because he was not made to pay a sum as a fine in addition to costs and expenses.

It is earnestly contended that the sum awarded for costs and expenses is excessive. It seems large, but we are unable to discover that it includes anything but what is legitimate, if counsel's fees are recoverable, and no objection appears to be made on that ground. It would seem that in harmony with *Wis. M. & F. Ins. Co. Bank v. Durner,* 114 Wis. 369, 90 N. W. 435, they should be held proper matters of expense. Though the counsel fees there dealt with related to the dissolution of an injunction, why such expenditures are legitimate recoverable expenses in one case and not in the other is not perceived. In many jurisdictions, and we think by the weight of authority, such expenditures are recoverable in a proceeding of this sort where the statute provides generally for recovery of expenses. 4 Ency. Pl. & Pr. 807, note 3; 9 Cyc. 55, note 5; *State ex rel. Curtis v. Durein,* 46 Kan. 695, 27 Pac. 148; *Stahl v. Ertel,* 62 Fed. 920. The holdings are somewhat in conflict on this subject, but we think that the better view is the one we adopt here. The items making up the amount allowed as counsel's fees were testified to by respondent in detail, both as to necessity for the services and reasonableness of the charges, and his evidence was supported by considerable other evidence and there was no opposition thereto. We are unable to see with sufficient clearness that any item is exorbitant for the service rendered or that the labor was not reasonably necessary, to warrant us in disregarding the uncontroverted evidence and the deliberate judgment of the trial court.

The foregoing covers all matters that seem to require special mention in this opinion.

*By the Court.*—The judgment in the action so far as it awards $74 damages to the respondent is modified by striking out such award, and as so modified it is affirmed. The final order and judgment in the contempt proceedings is affirmed, as are all orders specially appealed from. Costs are allowed to the appellant to the extent of clerk's fees only.