GENERAL BRONZE CORPORATION, Respondent, vs.
SCHMELING and others, Appellants.

*May 31—June 20, 1932.*

For the appellants there was a brief by *Paul, Ebert, Paul & Knoeller* of Milwaukee, and oral argument by *Harold H. Paul.*

For the respondent there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Victor D. Werner* of counsel, all of Milwaukee, and oral argument by *Mr. Werner.*

WICKHEM, J.   Prior to July 25, 1929, the defendants W. C. Schmeling, F. Van Kooy, and Arthur R. Stark were stockholders and employees of the Wisconsin Ornamental Iron & Bronze Company.   Each of the defendants on that date owned fifty-five shares out of a total of 981 shares of this company.   Schmeling was the assistant general manager and superintendent of production and erection; Van Kooy was vice-president and chief draftsman, and Stark was treasurer and purchasing agent.

Sometime prior to June 28, 1929, negotiations were commenced between the plaintiff and Mr. E. A. Ernest, president of the Wisconsin Ornamental Iron & Bronze Company, which culminated on July 25th in the contract here involved.   By the terms of this contract the plaintiff, General Bronze Corporation, purchased all the assets, business, and good will of the Wisconsin Ornamental Iron & Bronze Company, for a total consideration of $892,710, of which about half was paid in cash and the rest in shares of the General Bronze Corporation.   Later the contract was modified in such a manner that 5,280 shares of the General Bronze Corporation were transferred in lieu of cash, and the Wisconsin company permitted to retain securities valued

by it at $124,332.25. The stock which represented the purchase price was distributed to the stockholders of the Wisconsin company in proportion to their holdings in this company.

The following restrictive covenant was incorporated into the contract, which was signed by defendants and other stockholders of the Wisconsin company:

"Sixth. The stockholders agree that they will not at any time within fifteen years from date of transfer to General Bronze of said business, assets, and good will of the Wisconsin company, directly or indirectly engage in the manufacture or sale of architectural and ornamental bronze and/or iron work (except in the capacity of the agent or employee of General Bronze, its successors and assigns, . . . within any of the several states of the United States of America, or in the territories thereof, or within the District of Columbia, except and reserving, however, the right to manufacture and sell bronze and/or iron work in the state of Nevada), nor within the Dominion of Canada or the Republic of Mexico; provided, however, that each of said stockholders except E. A. Ernest shall have the right, if any of them shall not be in the employ of General Bronze, its successors or assigns, or any of its subsidiaries, to accept employment with other employers in the same or similar line of business in the respective capacities occupied by such respective stockholders (except E. A. Ernest) as of June 30, 1929, with the Wisconsin company, or in any other capacity."

Following the merger the defendants entered the employ of the plaintiff in practically the same capacity in which they were formerly employed by the old company, except that they were not officers of the plaintiff. Shortly thereafter the defendants decided to quit plaintiff's employ and promote an independent enterprise. On February 28, 1931, they organized the Wisconsin Art Bronze & Iron Company, and entered into competition with the plaintiff.

Defendants contend, first, that their organization of the Wisconsin Art Bronze & Iron Company and their subse-

quent employment by that company did not constitute a breach of the restrictive covenant. The restrictive covenant permits defendants to accept employment with other employers in the same or similar line of business in the respective capacities formerly occupied by defendants with the Wisconsin company, *or in any other capacity*. It is argued that since they were each stockholders, and since two of them were officers of the Wisconsin company at the time of the restrictive agreement, they have in no way violated the agreement by becoming stockholders, officers, and employees of the company which they have organized, and that aside from this, the covenant puts no limitation upon the relation they may have to a rival company. If this contention is valid, then the restrictive agreement is a mere nullity; but the covenant is not subject to such a construction. The covenant provides that the defendants may accept *employment* in any capacity with competitors of the plaintiff. It clearly does not permit them to become enterprisers and to organize competition with the General Bronze Corporation. It is idle to say that they are not competing with the General Bronze Corporation because the competitor is a corporation having a separate entity, of which they are merely stockholders, officers, and employees. To take such a position would be to permit the use of the corporate entity as an instrumentality of fraud. It is therefore concluded at the outset that if the contract is valid and enforceable, and if the plaintiff is not estopped to enforce it, or has not waived its provisions, there has been a violation which is subject to restraint.

The principal contention of the defendants is that the contract is void as against public policy, for the reason that its territorial extent is greater than is reasonably necessary for the protection of the good will sold. The rule governing the validity of contracts in restraint of trade has been set forth in several Wisconsin cases. *My Laundry Co. v.*

*Schmeling,* 129 Wis. 597, 109 N. W. 540; *Berlin Machine Works v. Perry,* 71 Wis. 495, 38 N. W. 82; *Richards v. American D. & S. Co.* 87 Wis. 503, 58 N. W. 787; *Palmer v. Toms,* 96 Wis. 367, 71 N. W. 654; *Durbrow Commission Co. v. Donner,* 201 Wis. 175, 229 N. W. 635; *George M. Danke Co. v. Marten,* 207 Wis. 290, 241 N. W. 359. In the *Palmer Case* it was said:

"The general rule that contracts in restraint of trade are void has its exceptions, one of which is that, for the protection of the good will of an established business, the owner of the same may make a sale thereof with such business, and, as an inducement to the purchaser to buy, part with his liberty to engage in the same business for such limited time and within such limited territory as may be reasonably necessary to protect the purchaser in the enjoyment of such business."

With the rule of law in mind, the facts concerning the business of the Wisconsin company become important. This company was organized in 1884, and remained in business continuously up to July 25, 1929. It is conceded that the company had an established good will and did business in twenty states and in the District of Columbia. It is also disclosed by the testimony that it had some business in twenty-three other states. It solicited business in every state of the Union, and its salesmen covered the entire United States. There is no evidence that it had any business in Canada or Mexico.

The trial court considered that the plaintiff was entitled to exact a restrictive covenant of the defendants, forbidding competition in every state in which the old company had an active good will. After ascertaining these states, the restraining order was made applicable to them. It is our conclusion that this was error. The question, What is the good will of a business? may not properly be so divided. "It . . . is an incident to the conduct of the

enterprise, and exists at the place where the business is carried on." *Lindemann v. Rusk*, 125 Wis. 210, 104 N. W. 119. It is intangible and, properly speaking, has no territorial extent. The purchaser of a business may protect the good will by exacting a restrictive covenant that is, among other things, reasonable with respect to the area within which it operates. The factor that determines the reasonableness of the area is the territorial extent of the business of the purchased company. Having found this, the territorial limits of the restrictive covenant are thereby ascertained. It was not proper to consider states as units in determining the territorial extent of the business of the Wisconsin company. This company had a nation-wide business, whether judged by its aspirations or by its widely distributed success in making sales. It had done a substantial amount of business in every state of the Union except Utah, Nevada, and Vermont. Its salesmen covered the entire country. The boundaries of the United States appear quite clearly to have constituted the natural boundaries of its business, and plaintiff was entitled to exact a covenant at least as extensive as the business whose good will it was purchasing. Since Nevada was eliminated from the contract, there is no question here of a general restraint, even if the United States be considered as a unit. We therefore conclude that the territorial extent of this business is not to be determined by taking individual states as units and ascertaining whether the purchased company enjoyed an active good will in each state; that upon the whole record it appears that the scope of the business was nation-wide, and that the restrictive covenant might properly be as broad as the territorial limits of the business. This was the view of the New York court in *Diamond Match Co. v. Roeber*, 106 N. Y. 473, 13 N. E. 419, upon substantially similar facts, and this case has heretofore been cited with approval

by this court. *My Laundry Co. v. Schmeling, supra; Richards v. American D. & S. Co., supra.*

There is no evidence that the business of this company extended into Canada or Mexico, and to the extent that the covenant restricts competition in these countries it is broader than is reasonably necessary to protect the good will sold. However, it is contended by the plaintiff that the contract by its own terms is divisible, and that the portions of the contract which are void by reason of being in restraint of trade may readily be separated and dropped, and the contract enforced as to the proper territory. *Trenton Potteries Co. v. Oliphant,* 58 N. J. Eq. 507, 43 Atl. 723, 46 L. R. A. 255, 78 Am. St. Rep. 612; *Amalgamated Industrial Corp. v. Teichholtz,* 177 App. Div. 456, 164 N. Y. Supp. 289; *John T. Stanley Co. v. Lagomarsino,* 53 Fed. (2d) 112; *Fleckenstein Bros. Co. v. Fleckenstein,* 76 N. J. L. 613, 71 Atl. 265, 24 L. R. A. 913–920; 30 Michigan Law Review, p. 1111.

We have concluded that this contention is valid. The parties have adopted as one unit of the restrictive agreement the states and territories of the United States and the District of Columbia, descriptive in a territorial sense of the entire United States; as a second unit the Dominion of Canada, and as a third unit the Republic of Mexico. These areas are disjunctively described and furnish a proper basis, under the doctrine of the foregoing cases, for dividing the covenant and enforcing it in the territory which is coextensive with the business of the old company.

The next contention of the appellant is that the contract affords the plaintiff no protection but simply obstructs the natural activities of the defendants and therefore is void as not being germane to the purpose of protecting the good will sold. The appellant cites *My Laundry Co. v. Schmeling, supra,* to the effect that "the purpose must have reference to the protection of the business sold. . . . The scope

of the restraint must be germane to such purpose." Also
*Berlin Machine Works v. Perry,* 71 Wis. 495, 501, 38
N. W. 82, where the court said:

"Tested by that rule, we have seen that the restriction
in this case is not a reasonable one, because not necessary
to the protection of the covenantee."

It is contended that since the covenant permits the de-
fendants to accept employment in a competing business, it
in effect permits the defendants to compete as ruthlessly
and as effectively as though they were the owners of such
competing business, and that the restriction is not germane
to the purpose of protecting the good will sold. To this we
cannot agree. The contract sought to remove the strongest
motive for effective competition by limiting the activities
of defendants to those of employees. It is a matter of
which this court can take notice that the urge to compete
ruthlessly and effectively is highly accelerated by ownership
of a business and the consequent right to a share of its
profits.

It is also contended that none of these defendants were
salesmen, and that a restriction upon the activities of a
mere stockholder or workman would not be reasonably nec-
essary in order to protect the good will sold. We deem
this contention to be without merit. Outside of E. A.
Ernest, these defendants were the principal factors in the
success of the old company. What they had accomplished
as officers and employees of the old company by their skill
in business and in shop administration they could do for a
rival, provided they had the incentive which an interest in
the business would give.

The next contentions are that plaintiff is estopped to
enforce the covenant, and that it has waived its enforce-
ment. This claim is based upon the fact that various offi-
cers and directors of plaintiff had full knowledge of every
step contemplated by defendants with respect to the new

venture, and that these officers and directors offered no objections to the proposed undertaking, but in fact encouraged it.

We discover nothing in the evidence to indicate that the defendants acted in reliance upon the conduct or representations of these officers or directors, or that there was any conduct upon which they were entitled to rely. They determined to engage upon the new enterprise, and communicated this intention to the officers and directors in question. They asked for no assurances that the covenant would not be enforced, and except from E. A. Ernest they received nothing in return except what amounted to merely polite regrets at their leaving and the hope that they would derive satisfaction and pleasure from the new undertaking. The responses were simply ordinary courtesies intended to have no legal effect. The covenant was not referred to and there would be no reason for the officers and directors of plaintiff to suppose that defendants, who had already determined to start a competing business, would conclude from a merely courteous, non-committal, and conventional letter or expression of regrets or good wishes, that plaintiff considered that it had no rights under the restrictive covenant or was waiving them. Nor would it seem that plaintiff's officers and directors had any reason to suppose that the nature of their response would in any way affect a determination which had already been made. Mr. Ernest, vice-president and director of the plaintiff, appears to have encouraged the defendants and to have assured them that they were "foot-loose," but he was not at that time engaged in any activity for the plaintiff within the scope of which the encouragement and representation could be said to fall. It is clear that Ernest was desirous of securing his release from plaintiff and entering the new enterprise with his old associates, and defendants could not fairly have relied upon

his statements as emanating from or intended to bind the plaintiff.

It follows from what has heretofore been said that upon defendants' appeal the judgment must be affirmed. Upon plaintiff's motion to review, the judgment must be modified so as to extend the restraint to the entire United States, except the state of Nevada.

*By the Court.*—The judgment appealed from is modified as indicated in the opinion, and as so modified is affirmed. Respondent to have costs on this appeal.