The Betten Company, Inc., and another, Respondents, vs. Brauman, Appellant.

*April 2—April 30, 1935.*

For the appellant there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *Robert A. Kaftan* and *J. Robert Kaftan*.

For the respondents there was a brief by *McGillan & Alk* of Green Bay, and oral argument by *Isadore G. Alk*.

FRITZ, J. Defendant assigns as error that the court erred in finding and concluding, (1) that some of the businesses, which plaintiffs contend are enumerated in the restrictive clauses of certain contracts and a bill of sale, were businesses in which the parties had engaged prior to the sale of defendant's stock in the plaintiff corporation to the plaintiff, Daniel Betten; (2) that the good will of that corporation extended one hundred miles from the city of Green Bay at the date of the sale; (3) that the restrictions were reasonably necessary for the protection of the good will of the corporation and the value of the stock sold to Betten; and (4) that plaintiffs were entitled to judgment.

The following facts found by the court were amply supported by proof: From 1921 to 1931 Betten and the defendant were actively engaged in business as junk dealers, with their junk yard in the city of Green Bay, and their operations and business gradually extending in amount and territory until, in the four years prior to February, 1932, their transactions, as occasions arose, extended to Appleton, Oshkosh, Manitowoc, Sheboygan, Milwaukee, Wisconsin Rapids, Antigo, Peshtigo, and Marinette in Wisconsin, Marquette and Iron Mountain in Michigan, and other cities, some of which were over one hundred miles from Green Bay. In 1931 they organized the plaintiff corporation, under the name of Betten-Brauman Company, and transferred to it all of the partnership assets, and that corporation, under the active participation and management of the defendant and Betten, continued that junk business without any visible change in the manage-

ment or operation thereof, the kinds of merchandise formerly dealt in as junk by the partnership, or the territorial scope thereof. Thus, by reason of the defendant's and Betten's continued activity on behalf of that business in purchasing as junk such commodities as paper, rags, paper mill supplies, belting, wiping rags, paper mill felts and supplies, hides, furs, wool, secondhand machinery, scrap iron and metals, which occasionally included new steel or reinforcing iron, each of them became acquainted with parties with whom that business was transacted within the territory covered by its operations and to which its good will extended. In January, 1932, the defendant, his wife, and her father entered into a contract, as parties of the first part, with the plaintiff, Betten, and his wife, as parties of the second part, under which Betten was given an option for ten days to purchase the stock of the parties of the first part in the plaintiff corporation, and the defendant was given a like option, during a period commencing after the expiration of those ten days, to purchase the stock of the parties of the second part; and, in connection therewith, the defendant, as well as Betten, covenanted and agreed with each other and the corporation, that—

"they and each of them, will not, directly or indirectly, enter into or engage in any of the following businesses, viz.: iron and metal, junk, paper, rags, hides, furs, secondhand machinery, paper mill supplies, used belting, wool, paper mill felts, wiping rags, waste, or in new steel and reinforcing iron, for a period of ten (10) years from the date hereof, within a radius of one hundred (100) miles from the City of Green Bay, and that they will not, directly or indirectly, assist or give information to any person or persons which would result in competition to the optionees of the Betten-Brauman Company, its successors or assigns, and that they . . . will not enter the employment of anybody else in any of such businesses or in any way, by any means whatsoever, directly or indirectly, or through any subterfuge, engage in any of such businesses or furnish aid to the same within said radius and within said time;" and also that "the bill of sale accompanying the sale of said stock shall contain restrictive

covenants generally of the tenor above provided, but with such further amplification as to the optionees may require, and shall be in form satisfactory to his attorney to insure freedom from competition for said period within said radius, and aid or assistance given to a competitor."

Thereafter Betten purchased under that option, and, in consideration of $46,800, paid by him to the defendant for his stock in the plaintiff corporation and another corporation which owned the land on which the junk business was conducted, the defendant, on February 8, 1932, conveyed that stock to Betten under a bill of sale, in which there was embodied a restrictive covenant which was substantially as provided in the option agreement.

In using the term "businesses" in those covenants, the parties intended, as the court found, to enumerate the various kinds of merchandise in which the partnership and the corporation had dealt in conducting that junk business, and the good will thereof, in respect to such dealings, then extended, in respect to territory, more than one hundred miles from Green Bay, so that the restrictions upon the defendant's right to engage in the junk business, in respect to such merchandise, within that radius and the period specified, were reasonably necessary for the due protection of the good will of the corporation and the value of the stock sold to Daniel Betten. The evidence also well warranted the court's opinion that, in their careful consideration of the provisions of the contract, when neither knew which would be the buyer and which the seller, the parties thereto, who were well acquainted with the trade and extent of the operations of the business in point of territory and volume, and also well knew the price which was to be paid, and what restrictions were reasonably necessary for the protection and continuance of the business, which would not be worth the purchase price if they became competitors therein, were more skilled and better qualified than a court, which did not know the junk business, to say what was reasonable or unreasonable in respect to the

restraint which they imposed in their contract. Defendant admitted that he intended to re-engage in the junk business at Green Bay in disregard of those restrictions.

As those covenants were entered into as part of the contract for Betten's purchase of the defendant's stock, the latter could, in that connection, lawfully contract with Betten and the plaintiff corporation for the protection prescribed by those covenants, for the benefit of both of the plaintiffs, in so far as the restrictions therein were reasonably limited, in respect to time, territory, and trade, to the type of business theretofore conducted by them as junk dealers. (See *Kradwell v. Thiesen,* 131 Wis. 97, 102, 111 N. W. 233; *Up River Ice Co. v. Denler,* 114 Mich. 296, 72 N. W. 157; 63 A. L. R. 318; Restatement, Contracts, § 516.) Because those restrictions were in a contract between vendor and vendee, on the sale of a controlling interest in the business, and not in a contract which was solely one of employment made between employer and employee, there is, in law, greater scope as to the permissible restraint, even though the defendant, as an incident to the sale, agreed to the restriction of his right to enter the employment of others engaged in the same business. *Milwaukee Linen Supply Co. v. Ring,* 210 Wis. 467, 246 N. W. 567; *Durbrow Commission Co. v. Donner,* 201 Wis. 175, 229 N. W. 635; *General Bronze Corp. v. Schmeling,* 208 Wis. 565, 243 N. W. 469.

Although, as contended by defendant, neither the partnership nor the corporation had businesses which dealt in each of the enumerated commodities as new articles, as distinguished from dealing therein as junk, it does appear that, in the course of its junk business, each had purchased the enumerated commodities as junk, and that among such purchases there were occasionally new articles, which were resold as such. Consequently, in that respect, the restriction did not extend beyond the type of business theretofore conducted, when due significance is given to the court's proper determination that, in using the word "business" in the re-

strictive covenants, it was not intended to enumerate businesses separately engaged in dealing in each of the enumerated articles independently of the handling thereof in the usual course of but one junk business. Likewise, although it is true that in that business there were not continuously repeating transactions with the identical patrons, at regular or even seasonal periods, it is manifest that the very nature of the business of dealing in junk was such that purchases and sales thereof could be made only intermittently, as the occasion therefor arose, because of the accumulation and sale of such commodities as junk by parties, within the restricted territory, from whom the partnership or the corporation had purchased junk. Under those circumstances, the fact that, in that respect, the transactions outside of Green Bay were not more continuous, does not necessitate the conclusion that the good will and trade of the business did not extend to the places in which there were such transactions as there was occasion for.

On the other hand, the reasonableness of the restrictions, in respect to the territorial scope thereof, depends upon whether the territory restricted did not exceed the radius from Green Bay of the localities in which the business had theretofore been transacted. On that proposition, we held recently that when "it appears that the scope of the business was nation-wide," then the restrictive covenant might properly be "as broad as the territorial limits of the business." *General Bronze Corp. v. Schmeling,* 208 Wis. 565, 243 N. W. 469. Under such circumstances, as we said in that case, "the territorial extent of this business is not to be determined by taking individual states as units and ascertaining whether the purchased company enjoyed an active good will in each state." By analogy, in the case at bar, the area which may be included under a restrictive covenant is not to be determined by limiting it to the area of individual cities in which business had been transacted, and treating the area of each city as a unit instead of considering, in view of the

nature of the business involved in this action, all of the territory which is within the radius of the more distant of those cities from Green Bay, as within the permissible limits. As that distance exceeds one hundred miles, in respect to a number of transactions within the four years preceding, the restriction was not unreasonable in respect to territory. As the restrictive covenants, as construed by the court, were reasonably necessary in all respects, the enforcement thereof by the judgment entered herein was proper.

*By the Court.*—Judgment affirmed.