BRUNSWICK CORPORATION, MERCU-
RY MARINE DIVISION,
Plaintiff-Respondent,

v.

Robert F. HERING, Defendant-Appellant.

No. 42876.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 4, 1981.

Coburn, Croft & Putzell, Paul M. Brown, St. Louis, for defendant-appellant.

Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Appeal from an order permanently enjoining defendant from racing the "Toshiba", an outboard motor racing boat, in the 1977 St. Louis World Championship Grand Prix unless the craft was powered by Mercury engines. We affirm.

The facts are substantially undisputed. For approximately 5 years commencing in 1971, defendant, Robert F. Hering, was employed as a race driver by the Racing and Hi-Performance Products Division of the plaintiff, Brunswick Corporation, Mercury Marine Division (hereinafter Mercury). Defendant was a member of the factory team and participated in races in the United States, Canada and Europe. He was one of Mercury's more successful drivers and had an international reputation.

The Toshiba was an outboard racing boat built in 1972 or 1973 by the A. Molinari Boat Yard of Como, Italy. In 1969, Mercury entered into a series of agreements with A. Molinari Boat Yard, Renato Molinari and Angelo Molinari, whereby Renato Molinari agreed, inter alia, to sell racing boats to Mercury. Further, the Molinaris' agreed not to sell outboard racing boats of any type without the prior written approval of Mercury. The Toshiba was shipped to Mercury's facility in Oshkosh, Wisconsin in 1974. In July, 1976, the Toshiba was owned by Renato Molinari although the craft was in the possession of Mercury. On July 7th or 8th, 1976, Renato Molinari, during a telephone conversation, gave the Toshiba to defendant. Defendant terminated his employment with Mercury on July 19, 1976. At that time defendant told Gary Garbrecht, Director of Mercury's Racing Division, that Renato Molinari had given defendant the Toshiba. Garbrecht wanted proof. Shortly thereafter defendant presented Garbrecht with a letter from Molinari dated July 8, 1976, allegedly evidencing this gift.[1] Mercury agreed to the

1. "Dear Gary: I wish to inform you by this letter that I have transferred the 'Toshiba' boat with which I should have run in the United States, to Mr. Bob Hering, who is authorized by

transfer of possession only after defendant signed the following document, dated July 27, 1976:

In consideration of Mercury Marine Division of Brunswick Corporation, not objecting to the transfer of a Molinari Sprint boat, (Toshiba) to me, I agree to the following:

1. To use only Mercury power on the boat in competition or otherwise.

2. To not copy the boat or allow the boat to be copied.

Defendant also paid $2,689.23 for freight charges and rigging which had been installed on the boat by Mercury. Defendant raced the boat in four races in August and September, 1976, using Mercury power. In 1977, he entered into an agreement with Outboard Marine Corporation (hereinafter O.M.C.) to race Molinari boats using engines supplied by O.M.C. Defendant was to race for O.M.C. in the 1977 championship race to be held in St. Louis County August 20–21. Due to customs problems, the Molinari boats enroute from Italy for use in the Grand Prix were delayed. Defendant thereupon sold the Toshiba to O.M.C. on August 17, 1977 for $5,000. The Toshiba was outfitted with O.M.C. power and defendant intended to race it in the Grand Prix. On August 19, 1977, the day before the race was to commence Mercury obtained an ex parte temporary restraining order enjoining defendant from using the Toshiba in the 1977 Grand Prix with other than Mercury power. By an order dated March 14, 1980, the trial court made this order permanent. This appeal followed.

■■■ Since the 1977 race has long since ended, it would appear that no effective relief could be granted by this court. However, there is still a ripe issue. Mercury posted a $7,500 bond and its liability on that bond depends upon whether the injunction was providently granted. The case is not moot and we will decide the issues on the merits. *Adamick v. Ferguson-Florissant School District*, 483 S.W.2d 629, 631 (Mo. App.1972). The trial court filed no findings

of fact or conclusions of law. Thus, all findings of fact will be presumed to have been found in accord with the judgment and the judgment will be upheld if valid under any reasonable theory presented by the evidence. *Porter v. Posey*, 592 S.W.2d 844, 848 (Mo.App.1969). Further, because this is a court tried case our scope of review is that set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The parties agree the substantive law of Wisconsin is to be applied.

■■■ In his first point defendant alleges that the trial court erred in its "apparent" application of Missouri law. However, defendant does not point to any specific instance in which the trial court applied Missouri rather than Wisconsin law. Consequently, defendant has preserved nothing for review and we find his first point is without merit. Rule 84.04(d).

■■■ Defendant next argues the July 27, 1976 contract was an illegal restraint of trade, in violation of the Wisconsin antitrust statute, Wis.Stat. § 133.03.[2] Section 133.03 provides that, "Every contract . . . in restraint of trade or commerce is illegal." Generally Wisconsin law provides that a negative restrictive covenant must be incidental to a lawful contract in order to be valid. *Journal Co. v. Bundy*, 254 Wis. 390, 37 N.W.2d 89 (1949). The restraint is ordinarily contained in a contract for the sale of property, a business, or professional practice, or in a contract of employment. *Id.* The restrictive covenant will be upheld if it is reasonable under all of the circumstances of the transaction including the business involved, and interests which the parties seek to protect. *Huntley v. Stanchfield*, 174 Wis. 565, 183 N.W. 984, 986 (1921). However, it is well settled that the covenant to be valid must be reasonable as to scope, duration and geographic area of application. *Betten Co. v. Brauman*, 218 Wis. 203, 260 N.W. 456, 458 (1935). We note also, restrictive covenants attendant to the

---

myself to dispose of it according to his own judgment." /s/ Renato Molinari.

**2.** Prior to 1980, this was Wis.Stat. § 133.01.

sale of property are allowed a greater scope of restriction than those contained in an employment contract. *Fullerton Lumber Co. v. Torborg*, 270 Wis. 133, 70 N.W.2d 585, 588 (1955); Restatement of the Law, Contracts, § 616, Comment (b).

Defendant claims that the contract was unreasonably restrictive as to the scope of its protection, duration and geographic area of application. We will consider each of these three points separately.

■ The scope of the restriction is not greater than reasonably necessary for Mercury's benefit. Defendant only agreed that if he used the Toshiba it would be propelled by Mercury power. He was not prohibited from using a non-Mercury engine in a boat other than the Toshiba. Nor was he prohibited from selling the Toshiba to or working for a Mercury competitor. Defendant also claims that it is unreasonable to require him to use Mercury power on the Toshiba in non-racing situations such as practice sessions and the testing of new engines. We do not agree. Mercury's interest in having defendant use Mercury power during testing and practice is the same as their interest in having defendant use Mercury power in actual racing competitions. Such tests and practices like races, expose Mercury engines to spectators and other outboard motor boat enthusiasts. This exposure and the good will thereby generated is the primary reason Mercury, and other outboard motor manufacturers, engage in races and the testing and practice sessions attendant to the sport. Thus, we believe the restriction reasonably required defendant to use Mercury power on the Toshiba during testing and practice runs.

■ The restrictive covenant is also reasonable in duration. We think it axiomatic that the restrictive covenant can last only as long as the Toshiba is a seaworthy race craft. Further, we take judicial notice of the fact that an outboard racing boat does not have a perpetual existence. The restrictive covenant pertaining to the Toshiba's source of propulsion when defendant pilots the craft is impliedly limited to the life of the boat. For that reason we face

neither the problem presented in *Tecktonius v. Scott*, 110 Wis. 441, 86 N.W. 672 (1901), wherein the defendant agreed to bind himself and his heirs forever to refrain from competing with the plaintiff nor the problem addressed in *Ruhland v. King*, 154 Wis. 545, 143 N.W. 681 (1913), wherein a restrictive covenant contained in a deed was described as "a restriction in perpetuity." Both of these restrictive agreements were held to be unreasonable restraints of trade.

■ We now examine whether the geographic area to which the covenant applied is reasonable. Both parties concede this agreement was intended to bind the defendant world wide. It has long been the rule in Wisconsin that a restrictive covenant may properly be as broad as the territorial limits of the business. *General Bronze Corp. v. Schmeling*, 208 Wis. 565, 243 N.W. 469, 471 (1932). Plaintiff Mercury asserts in its brief that it conducts business and enters outboard motor boat races world-wide. However, in the stipulation filed with the trial court, plaintiff stated that it races boats only in the United States and Europe. A review of the depositions reveal that defendant only raced in the United States, Canada and Europe. Further, our careful review of the entire record reveals there is no evidence to establish that any of Mercury's activities took place outside the United States, Canada or Europe. Consequently, the unlimited territorial restriction imposed by the agreement is broader than reasonably necessary for the protection of plaintiff's legitimate interests. *General Bronze v. Schmeling*, 243 N.W. 469, 471–72. However, only that portion of the area that is beyond the territorial limits reasonably necessary for the protection of Mercury is void. *Fullerton Lumber Co. v. Torborg*, 270 Wis. 133, 70 N.W.2d 585, 592 (1955). Since the evidence clearly established that Mercury's business extended throughout the United States, enforcement of the contract in St. Louis County was proper.

■ In his next point defendant argues that the case should be controlled by Wis.

Stat. § 103.465.[3]  We do not agree.  The statute does not apply because on the date of the contract, defendant was not employed by Mercury.  His employment was terminated eight days prior to execution of the agreement.  Thus, the agreement was pursuant to the transfer of property, not incident to employment.

In his next point, appellant argues that under the common law as well as under § 133.03, the Wisconsin anti-trust statute, the restrictive covenant is void because it was not reasonably limited to time or geographic area of application.  The above discussion concerning these issues applies not only to actions based on the common law but also to actions under this statute. *Behnke v. Hertz Corp.*, 70 Wis.2d 818, 235 N.W.2d 690 (1974).  Based upon the above discussion this point is ruled against defendant.

In defendant's next four points, he alleges that the July 27, 1976 contract was void because it lacked consideration and constituted duress of goods.  We do not agree.  Defendant acknowledges that the compromise of a doubtful claim asserted in good faith and honest belief constitutes consideration for a contract.  *Hewett v. Currier*, 63 Wis. 386, 23 N.W. 884 (1885).  The evidence shows that the Molinaris' agreed not to sell outboard racing boats of any type without the prior written approval of Mercury.  On July 27, 1976, when appellant presented Garbrecht with the letter from Renato Molinari, it stated, "I have transferred the 'Toshiba' ... to Mr. Bob Hering ...."  The word "transfer" is an ambiguous term.  Black's Law Dictionary defines it, "to take over the possession or control of ... to sell or give."  There was nothing in this letter which indicated that the Toshiba had not been sold.  Further, Mercury did not have to accept defendant's oral assurances that the boat was a gift.  In light of the ambiguous nature of the letter Mercury was entitled in good faith to object to the transfer.  Consequently, plaintiff's forbearance of their rights under the contract with Molinari constituted valid consideration for the July 27, 1976 agreement.  *Griswold v. Wright*, 61 Wis. 195, 21 N.W. 44 (1884).  It is equally clear that Mercury's actions did not constitute duress of goods.  Duress of goods exists when one party has possession or control of the property of another and refuses to voluntarily surrender it to the owner except upon compliance with an unlawful demand.  25 Am.Jur.2d, Duress § 6, p. 359.  However, it is never duress to do that which a party has a legal right to do. *Roelvink v. City of Milwaukee*, 273 Wis. 605, 79 N.W.2d 106, 108 (1957).  As we have demonstrated above, Mercury had a good faith right to refuse to transfer possession of the Toshiba unless presented with evidence the boat had not been sold.  Thus, no duress of goods resulted.

Defendant continues in the same vein in his next point, arguing that Mercury entered the covenant with unclean hands because the contract lacked consideration and was made under duress.  We do not agree.  As discussed above the contract was supported by consideration and was not made under duress.  Therefore, Mercury did not have unclean hands.

Finally, defendant in his last point argues Mercury's delay in seeking the temporary restraining order constituted laches and precludes the granting of injunctive relief.  Laches is an affirmative defense and must be pleaded.  Rule 55.08; *Kansas City Power & Light Co. v. Riss*, 319 S.W.2d 262, 265 (Mo.App.1958).  Defendant did not plead laches in any of its pleadings before the trial court.  Thus, this contention is not preserved for appellate review.  Further, there was no unreasonable delay.  The record shows Mercury made an attempt

---

**3.**  A covenant by an assistant, servant or agent, not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal.  Any such restrictive covenant imposing an unreasonable restraint of trade is illegal, void and unenforceable *even as to so much of the covenant or performance as would be a reasonable restraint.*  (emphasis added).

to obtain legal relief four days after acquiring knowledge of defendant's intention to race the Toshiba with engines other than those manufactured by Mercury.

Affirmed.

WEIER and GUNN, JJ., concur.