COURT OF APPEALS
DECISION
DATED AND FILED

August 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1768**

STATE OF WISCONSIN

Cir. Ct. No. **2019CV817**

IN COURT OF APPEALS
DISTRICT IV

AUTO-CHLOR SYSTEM OF THE MID-SOUTH, LLC,

    PLAINTIFF-APPELLANT,

  V.

DOUG EHLERT,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

¶1 KLOPPENBURG, J. Auto-Chlor System of the Mid-West, LLC, sued Doug Ehlert for breach of a noncompetition agreement. Ehlert moved for summary judgment on the ground that the noncompetition agreement is unenforceable. Auto-Chlor agrees that the noncompetition agreement is

unenforceable if it is subject to WIS. STAT. § 103.465 (2019-20), which governs noncompetition agreements in employment contracts.[1] Auto-Chlor argues that the circuit court erred in concluding that the noncompetition agreement is subject to § 103.465 and, on that basis, erred in granting summary judgment for Ehlert and dismissing Auto-Chlor's complaint. Specifically, Auto-Chlor argues that the court erred in determining that the noncompetition agreement by its unambiguous terms required Ehlert to sign the noncompetition agreement as a condition of his employment with Auto-Chlor. We reject Auto-Chlor's argument and, therefore, affirm.

## BACKGROUND

¶2 The following facts are undisputed for purposes of summary judgment.

¶3 Auto-Chlor manufactures, rents, and sells sanitizing and washing equipment, chemical dispensers, linen washing chemicals, and various compounds, solutions, and materials for sanitizing and washing eating utensils and linen washing.

¶4 Ehlert's parents, Brian and Elizabeth Ehlert, owned a business called B&E Services, Inc., which was a competitor of Auto-Chlor. Ehlert was a "key employee" of his parents' business. On July 5, 2016, Auto-Chlor executed a Sale of Assets Agreement and Bill of Sale between "BRIAN AND ELIZABETH EHLERT, DBA AS B & E SERVICES INC, herein called 'Seller,' and AUTO-

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

CHLOR SYSTEM OF THE MID SOUTH, LLC, a Delaware LLC, herein called 'Buyer,'" for Auto-Chlor's purchase of Ehlert's parents' business.

¶5      On the same day, Auto-Chlor and Ehlert executed a contract titled "Noncompetition Agreement."

¶6      We will discuss in detail the pertinent provisions of the noncompetition agreement in our analysis below.  Here, it suffices to state that the agreement makes clear that Ehlert was required to sign the noncompetition agreement in order for Auto-Chlor to employ Ehlert after the sale of the business and also for Auto-Chlor to close on the sale of the business.

¶7      On the same day that these agreements were signed, Auto-Chlor closed on the sale of Ehlert's parents' business, and later that month Ehlert became employed by Auto-Chlor.  Ehlert ended his employment with Auto-Chlor in December 2016.

¶8      Auto-Chlor subsequently filed this action against Ehlert alleging that he breached the noncompetition agreement.  Ehlert moved for summary judgment on the grounds that the noncompetition agreement violates WIS. STAT. § 103.465 and that, even if it does not violate the statute, Auto-Chlor breached the agreement.  The circuit court granted the motion on the first ground asserted by Ehlert and dismissed the complaint.

## DISCUSSION

¶9      The parties agree to the following three propositions.  First, Auto-Chlor cannot enforce the noncompetition agreement if the agreement is subject to WIS. STAT. § 103.465.

3

¶10 Second, if WIS. STAT. § 103.465 does not apply to the noncompetition agreement, the agreement is subject to the common law "rule of reason," which generally permits greater restrictions on employees and under which the agreement may be enforceable in whole or in part. *See The Selmer Co. v. Rinn*, 2010 WI App 106, ¶19 and n.7, 328 Wis. 2d 263, 789 N.W.2d 621 (under § 103.465, a noncompetition agreement that imposes any unreasonable restriction is entirely unenforceable, but under the common law "rule of reason" a noncompetition agreement that imposes one or more unreasonable restrictions may be reformed and enforced to the extent that it is reasonable to do so); *id.*, ¶20 (noncompetition agreements ancillary to the sale of a business are "subject neither to the 'exacting scrutiny' mandated by § 103.465, nor the statute's prohibition on partial enforcement"); *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶65, 319 Wis. 2d 274, 767 N.W.2d 898 (explaining that § 103.465 was enacted in response to Wisconsin supreme court decisions "authorizing courts to modify unreasonable [noncompetition agreements] to make them reasonable and enforceable."); *id.*, ¶19 (explaining that noncompetition agreements subject to § 103.465 are "disfavored at law" and "to be construed in favor of the employee").

¶11 Third, if Ehlert was required to sign the noncompetition agreement before he could be employed with Auto-Chlor then WIS. STAT. § 103.465 applies, and if it was not a condition of employment then § 103.465 does not apply.

¶12 Bearing in mind these agreed propositions, the issue on appeal is whether, as Ehlert contends, he is entitled to summary judgment and dismissal of Auto-Chlor's complaint on the ground that his employment with Auto-Chlor was conditioned on his signing the noncompetition agreement. We conclude that Ehlert is entitled to summary judgment on this issue because the unambiguous language in the noncompetition agreement establishes that Ehlert's signing the

noncompetition agreement was required as a condition of Ehlert's employment with Auto-Chlor.

¶13 We first summarize the applicable standard of review and legal principles, next provide additional pertinent background, and then explain our conclusion and why we reject Auto-Chlor's arguments to the contrary.[2]

## A. Standard of Review and Legal Principles[3]

¶14 We review the circuit court's grant of summary judgment de novo, construing the facts and reasonable inferences from those facts in the nonmoving party's favor. *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶32, 237 Wis. 2d 19, 614 N.W.2d 443. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[2] We appreciate both counsel's compliance with the Rules of Appellate Procedure in citing in the table of authorities in their briefing each and all of the pages on which each citation appears, instead of using *passim*. This facilitates our careful review of the arguments, while use of *passim* often hinders it.

On another briefing note, we observe with dismay that Auto-Chlor's briefing fails to include any citations to the record. It includes citations to its appendix in the facts section of its initial brief but does not include citations either to the record or to the appendix in its argument section or in most of its argument in its reply brief. The appendix is not the record. *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. We admonish counsel that WIS. STAT. § 809.19(1)(e) requires citations to parts of the record relied on in the argument section of the brief. Compliance with the Rules of Appellate Procedure, particularly those rules regarding accurate record citation, is not optional and is essential in allowing this court to timely perform our duties. *See Keplin v. Hardware Mut. Cas. Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321 (1964). This court has no obligation to scour the record to review arguments unaccompanied by adequate record citation. *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

[3] The noncompetition agreement contains a choice of law provision requiring that any dispute be resolved by the application of Delaware law, but neither of the parties argues that any law but Wisconsin law applies here, and we follow the lead of the parties on this in applying only Wisconsin law.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶15 WISCONSIN STAT. § 103.465 applies to any agreement by an employee "not to compete with his or her employer … during the term of the employment … or after the termination of that employment." Sec. 103.465. It is undisputed that the noncompetition agreement here provides that Ehlert was required to sign it in order to begin employment with Auto-Chlor after the business sale, with the result that he would be bound by its restrictions on his business-related activities during his employment for five years after the sale. Thus, the agreement comes within the statutory language, and Auto-Chlor makes no argument to the contrary. *See* ***Karsten v. Terra Eng'r & Constr. Corp.***, No. 2016AP2025, unpublished slip op. (WI App Sept. 7, 2017), ¶13 (unpublished opinion that we may cite for persuasive value, *see* WIS. STAT. RULE 809.23(3)(b)) (explaining that § 103.465 applies by its explicit terms to any agreement by an employee "not to compete with his or her employer … during the term of the employment … or after the termination of that employment," and that the quoted language, when read literally, applied to the agreement at issue there). As we noted in ***Karsten***, ***id.*** at ¶14, this court has interpreted § 103.465 to apply to a noncompetition agreement in circumstances in which the agreement "cannot be separated from the employment relationship—either because the [agreement] is a condition of employment, or because the employer possesses an unfair bargaining advantage vis-à-vis the employee." ***Selmer Co. v. Rinn***, 2010 WI App 106, ¶23, 328 Wis. 2d 263, 789 N.W.2d 621. Thus ***Selmer*** establishes a two-pronged test: when a noncompetition agreement is a condition of employment or when the

employer possesses an unfair bargaining advantage vis-à-vis the employee, then § 103.465 applies.

¶16     As stated, the first prong of the ***Selmer*** rule is that the noncompetition agreement be a condition of employment.[4]     Whether the noncompetition agreement here is a condition of employment requires that we interpret the noncompetition agreement de novo, according to standard rules of contract interpretation.  *See **Farm Credit Servs. of North Cent. Wis., ACA v. Wysocki***, 2001 WI 51, ¶¶8-12, 243 Wis. 2d 305, 627 N.W.2d 444 (applying on de novo review the "standard rules of contract interpretation" to the interpretation of noncompetition agreements); ***Runzheimer Int'l, Ltd. v. Friedlen***, 2015 WI 45, ¶18, 362 Wis. 2d 100, 862 N.W.2d 879, (stating that noncompetition agreements are contracts, the interpretation of which is a matter of law that we review de novo).  We construe contracts "'to ascertain the true intentions of the parties as expressed by the contractual language,'" recognizing that "the best indication of the parties' intent is the language of the contract itself," because "that is the language the parties 'saw fit to use.'"  ***Town Bank v. City Real Estate Dev., LLC***, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (citation omitted).  "'If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence.'"  ***Id.***

---

[4]  Because our conclusion that Ehlert was required to sign the noncompetition agreement as a condition of employment is dispositive, we do not address whether Auto-Chlor possessed an unfair bargaining advantage over Ehlert.  *See **League of Women Voters of Wis. Educ. Network, Inc. v. Walker***, 2013 WI App 77, ¶93 n.13, 348 Wis. 2d 714, 834 N.W.2d 393 ("[A]ppellate courts need not address non-dispositive issues.").

## B. Additional Background

¶17 The specific language of the noncompetition agreement between Ehlert and Auto-Chlor reads:

> THIS NONCOMPETITION AGREEMENT (this "Agreement"), dated as of July 5, 2016, is made and entered into by and between AUTO-CHLOR SYSTEM OF THE MID-SOUTH, LLC, a Delaware limited liability company (the "Company"), and DOUG EHLERT (Mr. Ehlert).
>
> RECITALS
>
> A. The Company and B&E Services Inc are parties to a contract for Sale of Assets Agreement dated as of the date hereof (the "Sale of Assets Agreement"), a copy of which is attached hereto as Exhibit 1.
>
> B. As a material inducement for the Company to enter into the sale of Assets Agreement, the Company is requiring Mr. Ehlert to execute and deliver this Agreement.
>
> C. Mr. Ehlert will receive significant personal benefits by reason of the Company's execution of the Sale of Assets Agreement.
>
> AGREEMENTS
>
> ….
>
> 5. Noncompetition.
>
> (a) As an inducement for the Company to enter into the sale of Asset Agreement and for the benefits Mr. Ehlert will receive as a result of the Sale of Asset Agreement, Mr. Ehlert agrees that for a period of 5 years after completion of the sale of assets by B&E to Auto-Chlor as expressed in the Contract for Sale of Assets Agreement (the "Noncompetition Period"), Mr. Ehlert shall not, directly or indirectly, whether as a principal, agent, employee, employer, shareholder, co-partner or in any other individual or representative capacity whatsoever, engage in any Prohibited Activities (as defined in section 5(b) below) with any person or entity in who was a Customer of B&E Services Inc in the Territory at any time within the 12-month period before the commencement of the Noncompetition Period.

(b) The term "Prohibited Activities" means any or all of the following: (i) the supply of equipment, products or maintenance services for warewashing[5] (whether through the use of automatic dispensers, warewashing machines, or any other type of equipment and products, including those similar to the equipment products and chemical products employed by Auto-Chlor System); (ii) the sale, installation or service of the equipment described in the preceding clause (i) and/or the furnishing of products and materials therefor; (iii) the supply of laundry equipment, products or maintenance services; and (iv) the supply or sale of any other products or services that compete with Auto-Chlor System products and services.

....

*(d) Upon execution of this Noncompetition Agreement and the Auto-Chlor Employment Agreement, Mr. Ehlert will enter employment with Auto-Chlor System of the MidSouth, LLC, as an account executive.*

(Italicized emphasis added.)

## C. Analysis

¶18    The above-italicized language in the noncompetition agreement expressly conditions Ehlert's employment with Auto-Chlor on his signing the agreement. Because this language unambiguously establishes that Ehlert's signing the noncompetition agreement is a condition of his employment with Auto-Chlor, WIS. STAT. § 103.465 applies. Because Auto-Chlor concedes that the noncompetition agreement is unenforceable if the statute applies, Ehlert is entitled to summary judgment and dismissal of Auto-Chlor's complaint alleging that Ehlert breached the agreement.

---

[5] The term "warewashing" generally refers to the process of cleaning the wares, including pots and pans, cutlery, flatware, glasses, kitchenware, serving pans, and trays, used in preparing or serving food.

9

¶19    Auto-Chlor does not argue that this language is ambiguous. However, Auto-Chlor argues that its import in resolving the issue here is somehow negated by other language in the noncompetition agreement. Specifically, Auto-Chlor maintains that the noncompetition agreement is also a condition of Auto-Chlor's purchase of Ehlert's parents' business, and appears to argue that the agreement cannot be required as both an employment condition and a sale-of-business condition. We reject this argument.

¶20    As support for the proposition that the noncompetition agreement is required before the sale of the business could be accomplished, Auto-Chlor points to provisions that: (1) require Ehlert to sign the noncompetition agreement as an inducement for Auto-Chlor to purchase his parents' business; (2) measure the prohibitions on certain business-related activities not from the termination of Ehlert's employment but from the sale of the business; (3) prevent competition with former B&E customers and not with Auto-Chlor customers; and (4) do not "restrict Ehlert's employment options." We assume without deciding that these provisions establish that the agreement is a condition of the sale of the business. However, Auto-Chlor does not make clear why we should conclude, based on that assumption, that the agreement is not *also* a condition of Ehlert's employment with Auto-Chlor. And we see no reason that the agreement could not be both a condition of Ehlert's employment with Auto-Chlor and also a condition of the sale of the business. That is, Auto-Chlor fails to explain why the agreement's being a condition of employment is not dispositive. *See Kartsen*, No. 2016AP2025, ¶22 (explaining that the noncompetition agreement there was both a condition of something other than employment and a condition of employment, and that the latter condition was dispositive).

10

¶21    A noncompetition agreement may require that it be signed as a condition of any number of obligations outside that agreement.  Auto-Chlor's argument appears to be that, when a noncompetition agreement requires that it be signed as a condition of obligations outside the agreement in addition to the employment by one of the parties of the other party signing the agreement, the connections with the non-employment obligations negate the employment connection.    This  proposition  would  render  the  ***Selmer***  two-prong  test meaningless, because under Auto-Chlor's approach whenever the parties enter into any other contractual obligations (as they will frequently do) the employment condition would lose all significance.  Auto-Chlor cites no statement in Wisconsin case law that a noncompetition agreement that is a condition of employment is not subject to WIS. STAT. § 103.465 solely because the agreement is also a condition of other obligations involving one or both of the parties to the agreement.  We reject Auto-Chlor's argument as contrary to the unambiguous terms of the noncompetition agreement and unsupported by Wisconsin law.

¶22    It does not help Auto-Chlor to argue in addition that undisputed facts extrinsic to the noncompetition agreement establish that the agreement is a condition of the business sale.  We reject Auto-Chlor's argument based on extrinsic evidence absent its citation to any legal authority that, contrary to the ordinary rule of contract interpretation, would allow for the consideration of extrinsic evidence for purposes of construing a contract when the contract terms are unambiguous.  *See **Farm Credit Services***, 243 Wis. 305, ¶12 (under the standard rules of contract interpretation, we do not consider extrinsic evidence when the contract language is unambiguous).  Indeed, Auto-Chlor acknowledges, as it must, that our interpretation of the agreement must be based on its specific

11

language. Nevertheless, for the sake of completeness, we briefly explain why Auto-Chlor's reliance on extrinsic evidence fails.

¶23 Most prominently, Auto-Chlor cites to the fact, undisputed for purposes of summary judgment, that Ehlert was a "key employee" of his parents' business. This is important, Auto-Chlor suggests, because it establishes that Auto-Chlor wanted to bind Ehlert to a noncompetition agreement, whether or not he was employed by Auto-Chlor.[6] However, Auto-Chlor cites no Wisconsin law supporting the proposition that this strong interest in binding Ehlert's activities negates the application of WIS. STAT. § 103.465 to a noncompetition agreement that also expressly requires its signing as a condition of employment.

¶24 Auto-Chlor also points to a separate noncompetition agreement, which all Auto-Chlor employees were required to sign, that prohibited employees from soliciting Auto-Chlor customers for twelve months after their employment with Auto-Chlor ended. Auto-Chlor contrasts that noncompetition agreement, which it admits is subject to WIS. STAT. § 103.465, with the noncompetition agreement at issue here, which it argues is not. It apparently intends to argue that the application of § 103.465 to a noncompetition agreement that expressly requires its signing as a condition of employment is negated by the existence of another noncompetition agreement that also expressly requires its signing as a condition of employment. However, as with its "key employee" argument above, Auto-Chlor

_____

[6] Significantly, Auto-Chlor does not argue that Ehlert was a seller of his parents' business. *See* **General Bronze Corp. v. Schmeling**, 208 Wis. 565, 243 N.W. 469, (1932) (a noncompetition agreement with the seller of a business may be reasonable because the purchaser is buying the good will of the business from the seller and is entitled to be protect from competition by the seller). It is undisputed that Auto-Chlor paid Ehlert while he was employed with Auto-Chlor but that Auto-Chlor did not pay Ehlert any part of the purchase price for his parents' business.

cites no Wisconsin law supporting such a proposition, and we see no basis for that argument.

¶25 In sum, we conclude that the unambiguous language in the noncompetition agreement establishes that Ehlert's signing the noncompetition agreement was required as a condition of Ehlert's employment with Auto-Chlor. Accordingly, the noncompetition agreement is subject to WIS. STAT. § 103.465. Given Auto-Chlor's concession that the noncompetition agreement is unenforceable if it is subject to § 103.465, Ehlert is entitled to summary judgment and dismissal of Auto-Chlor's complaint alleging that Ehlert breached the agreement.[7]

¶26 Before concluding, we admonish Auto-Chlor's counsel for making repeated unprofessional and disrespectful comments about the circuit court that have no support in the record. These examples suffice to support our admonishment: "[t]he court could not conceptually appreciate …."; "the circuit court's reliance on seat-of-the pants intuition as a basis for [its] decision .…"; "[t]he circuit court misapprehended the basic contract principle requiring consideration …."; "[t]he circuit court's understanding of consideration was myopically limited …." Zealous advocacy is not furthered by gratuitous, disrespectful comments from counsel. Counsel are obligated to make supported

---

[7] Auto-Chlor makes a separate argument that the noncompetition agreement is enforceable because Ehlert received consideration for signing the noncompetition agreement, in the form of Auto-Chlor's "promise" to purchase his parents' business and its agreeing to employ him. However, Auto-Chlor does not explain how this matters, given its concession that the noncompetition agreement is unenforceable if it is subject to WIS. STAT. § 103.465, which we have concluded it is.

challenges to circuit court actions or decisions that could have legal merit; counsel are also obligated to avoid making pointless ad hominem attacks of this kind.

## CONCLUSION

¶27     For the reasons stated, we affirm the circuit court's order granting summary judgment in favor of Ehlert and dismissing Auto-Chlor's complaint.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.